THE STATE, EX REL. NOLL, APPELLEE, *v.*
INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

[Cite as State, ex rel. Noll, v. Indus. Comm. (1991), 57 Ohio St. 3d 203.]

(No. 89-2045—Submitted August 29, 1990—Decided January 24, 1991.)

*Clements, Mahin & Cohen* and *William E. Clements,* for appellee.

*Lee I. Fisher,* attorney general, and *Michael L. Squillace,* for appellant.

*Stewart R. Jaffy & Associates Co., L.P.A.,* and *Stewart R. Jaffy,* urging affirmance for *amici curiae,* Ohio AFL-CIO and United Auto Workers.

ALICE ROBIE RESNICK, J. In 1983, we addressed a similar problem in *State, ex rel. Mitchell,* v. *Robbins & Myers, Inc.* (1983), 6 Ohio St. 3d 481, 483-484, 6 OBR 531, 533-534, 453 N.E. 2d 721, 724, wherein it was stated:

"This appeal highlights a problem which is becoming increasingly prevalent; that is, the commission's failure to state with any precision the basis for its decisions. Claimants and employers alike, who appear before the commission, are frequently informed that requested benefits are either being granted or denied based on 'the evidence in the file and/or the evidence adduced at the hearing.' See *State, ex rel. Berry,* v. *Indus. Comm.* (1983), 4 Ohio St. 3d 193, 196-198 (Clifford F. Brown, J., concurring). In the present case, this problem is exemplified as a result of the parties' dispute over the meaning of the district hearing officer's report.

"For the reasons that follow, we will, when necessary, henceforth grant a writ of mandamus directing the commission to specify the basis of its decision. Cf. *State, ex rel. Cox,* v. *Indus. Comm.* (1981), 67 Ohio St. 2d 235 [21 O.O. 3d 147]; *State, ex rel. GF Business Equipment, Inc.,* v. *Indus. Comm.* (1982), 2 Ohio St. 3d 86. In other words, district hearing officers, as well as regional boards of review and the Industrial Commission, *must specifically state which evidence and only that evidence which has been relied upon to reach their conclusion, and a brief explanation stating why the claimant is or is not entitled to the benefits requested.* Moreover, *this court will no longer search* the commission's file *for 'some evidence'* to support an order of the commission not otherwise specified as a basis for its decision." (Emphasis added.)

Thus in *Mitchell, supra,* we required that the regional board of review and the commission specifically state which evidence was relied upon and provide a brief explanation stating why the claimant is or is not entitled to benefits. In spite of our holding in *Mitchell, supra,* the issue of what evidence the Industrial Commission relied upon in making its decision has continued to arise in many cases which come before us.

Because the problem persisted, in *State, ex. rel. Stephenson,* v. *Indus. Comm.* (1987), 31 Ohio St. 3d 167, 31 OBR 369, 509 N.E. 2d 946, we stated the following:

"* * * We hold it to be necessary that the commission look at the claimant's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record in making its determination of permanent total disability.

"Perhaps these factors were considered by the commission, but because we find no indication in the commis-

sion's order that such factors were considered by the commission in reaching its decision on the percentage of permanent total disability * * * we reverse the judgment of the court of appeals and remand this cause to the commission for consideration of said factors, if previous consideration had not been given, and an amended order stating the commission's findings after such consideration." *Id.* at 173, 31 OBR at 374-375, 509 N.E. 2d at 951.

The problem, however, was not eliminated by *Stephenson, supra.* Rather, the commission started to release boilerplate orders simply reciting the foregoing nonmedical factors and totally failing to explain its decision, as required by *Mitchell, supra.* Thus, it was necessary for this court to once again reiterate the procedure to be followed by the commission. Accordingly, in *State, ex rel. Frigidaire Division, General Motors Corp.,* v. *Indus. Comm.* (1988), 35 Ohio St. 3d 105, 518 N.E. 2d 1194, at paragraph one of the syllabus, we stated: "An order of the Industrial Commission must briefly explain the reasoning of the commission in granting or denying the benefits requested by the claimant, and must specifically state which evidence, in particular, the commission relied upon in reaching its decision. (*State, ex rel. Mitchell,* v. *Robbins & Myers, Inc.* [1983], 6 Ohio St. 3d 481, 6 OBR 531, 453 N.E. 2d 721, followed.)" See, also, *State, ex rel. Swan,* v. *Midland Indus. Elec. Co.* (1988), 36 Ohio St. 3d 53, 521 N.E. 2d 787; *State, ex rel. Huntley,* v. *Interlake Steel Corp.* (1989), 42 Ohio St. 3d 168, 538 N.E. 2d 103.

The foregoing requirements have been repeated in cases too numerous to cite. The Industrial Commission, however, continues to simply make formal, boilerplate incantations, such as in this case, wherein the commission stated that its order was "based particularly upon the reports [*sic*] of Doctors [*sic*] Steiman, * * * the claimant's age, education, work history and other disability factors including physical, psychological and sociological * * *." Such an order is totally meaningless on review. It does not comply with any of the requirements set forth in *Mitchell, supra, Stephenson, supra,* and all of the other cases which followed. We have repeatedly called for orders which briefly explain the reasoning and specifically state which evidence was relied upon.

This court recently decided *State, ex rel. Hartung,* v. *Columbus* (1990), 53 Ohio St. 3d 257, 560 N.E. 2d 196, wherein we noted that "[o]rders denying permanent total disability benefits * * * remain frustratingly vague. These orders often indicate only that the claimant is 'not permanently and totally disabled.' Again, such general wording provides no insight into the basis for the commission's decision and can lead to the sort of confusion seen here. * * *" *Id.* at 259, 560 N.E. 2d at 198. In *Hartung,* we gleaned from a similar order denying benefits (our criticism of which we now affirm) that the claimant "* * * had a psychological impairment of five percent and an orthopedic impairment of twenty percent. He was sixty years old at the time of application and had an eleventh grade education. He was employed for many years after his initial injury in 1967. Moreover, although their conclusions are not determinative, all of the medical reports relied on by the commission indicated that appellant was capable of some sustained remunerative employment. Obviously, the commission was not convinced that the combination created permanent total disability. We find no abuse of discretion." *Id.* at 259-260, 560 N.E. 2d at 199. Thus, *Hartung* was a fact-specific

case. Indeed, the vast majority of these cases are by their nature fact-specific, and must be treated on an individual basis by the hearing officers, the commission, and the courts. The holding in *Hartung* cannot be applied to other cases involving permanent total disability benefits.

Once again we hold that in each of its orders granting or denying benefits to a claimant the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision. An order of the commission should make it readily apparent from the four corners of the decision that there is some evidence supporting it. We reiterate that this court will not search the entire record for "some evidence" to support the commission's orders. As stated in *State, ex rel. Swan, supra,* a *Stephenson* order requires the commission to issue "an amended order identifying which of the above *Stephenson* factors were considered and its findings after such consideration." *Id.* at 54, 521 N.E. 2d at 788. Our docket has been inundated with these cases and we must in each instance order the commission to comply with *Mitchell, supra; Stephenson, supra; Swan, supra;* and *Huntley, supra.*

The time has come for the commission to recognize its responsibility to prepare fact-specific orders which will be meaningful upon review. It is well-settled that the commission has the exclusive authority to determine disputed facts and weight of the evidence. See *State, ex rel. Milburn,* v. *Indus. Comm.* (1986), 26 Ohio St. 3d 119, 26 OBR 102, 498 N.E. 2d 440; *State, ex rel. Hudson,* v. *Indus. Comm.* (1984), 12 Ohio St. 3d 169, 12 OBR 237, 465 N.E. 2d 1289; and *Meeks* v. *Ohio Brass Co.* (1984), 10 Ohio St. 3d 147, 10 OBR 482, 462 N.E. 2d 389. However, a meaningful review can be accom-

plished only if the commission prepares orders on a case-by-case basis which are fact-specific and which contain reasons explaining its decisions. Since the order of the commission in this case employs only boilerplate recitation of the *Stephenson* factors, we order the commission to prepare an amended order. Such order must specifically state what evidence has been relied upon to reach its conclusion and, most important, briefly explain the basis of its decision.

We are acutely aware of the vast number of cases which arise involving these issues. Additional work will of necessity be encountered. However, we can never simply use expedience in resolving these cases, for by doing so, justice and fairness would be lost.

The judgment of the court of appeals is affirmed. A limited writ is granted ordering the commission to vacate its order and to proceed in accordance with this opinion.

*Judgment affirmed and limited writ allowed.*

H. BROWN, J., concurs.

SWEENEY and DOUGLAS, JJ., concur separately.

MOYER, C.J., and HOLMES, J., concur in the syllabus and judgment only.

WRIGHT, J., concurs in judgment only.

DOUGLAS, J., concurring. The issue in this case is whether the decision by the Industrial Commission denying appellant's application for permanent total disability compensation is supported by some evidence. The majority of this court limits our holding in *State, ex rel. Hartung,* v. *Indus. Comm.* (1990), 53 Ohio St. 3d 257, 560

N.E. 2d 196, to the facts of that case. I agree. In my judgment, it is impossible for this court to conclude that the Industrial Commission's decision is supported by some evidence.

If *Hartung* ever stood for the proposition that the commission never has to, with any specificity, say how the factors set forth in *State, ex rel. Stephenson,* v. *Indus. Comm.* (1987), 31 Ohio St. 3d 167, 31 OBR 369, 509 N.E. 2d 946 (hereinafter "*Stephenson* factors") have been considered, then I was wrong in my judgment to concur in the *Hartung* decision. Such a holding is indefensible, cruel and unjust. The case at bar presents a good example of why a general and generic holding in a case should not be applied across the board to a class of cases which, by their very nature, are fact-specific.

Due to a work-related injury, Noll, claimant-appellee, filed a claim for temporary total disability which was recognized for neck strain, head concussion and cervical degenerative disc disease (claim No. 84-39286). Finding himself unable to successfully return to work, Noll filed an application for permanent total disability compensation.

Noll is sixty years old. He has been employed as a construction laborer, maintenance worker or carpenter throughout his entire working life. His job-related activities included the use of hand and power tools and required him to regularly carry approximately one hundred pounds. He was on his feet throughout the work day and was required to do considerable lifting, bending and twisting at the head, neck and lower back.

In support of his application for permanent total disability compensation, Noll was examined by Dr. Michael T. Farrell, Ph.D., a vocational expert. Dr. Farrell's report shows that Noll achieved a seventh grade education.

Intellectually, Noll functions at the borderline to low-average range. He is intellectually surpassed by approximately seventy-six percent of the general population. His written communication is very poor. He has difficulty comprehending even simple written questions. He neither reads nor writes satisfactorily. Dr. Farrell concluded that Noll is incapable of returning to his past employment as a carpenter or construction laborer and that Noll's skills are not transferrable to another occupation. Farrell also concluded that Noll is not a good candidate for vocational rehabilitation by on-the-job training due to Noll's intellectual capacity. Farrell concluded that Noll should be considered permanently and totally disabled.

Noll was also examined by Dr. O. Daniel Fox, M.D. In a report submitted by Dr. Fox, he states in part that:

"I feel that Mr. Noll is permanently and totally disabled from any type of gainful employment. He only has an eighth grade education [*sic*] and I do not feel that he is capable of rehabilitating himself to any type of employment. I feel that he has reached his maximum level of recovery."

Noll was also examined by Dr. Gerald S. Steiman, M.D. In his report, Dr. Steiman states that:

"It is my opinion that Mr. Noll has *evidence of a 75 percent permanent partial impairment of the cervical spine* which corresponds to an 18 percent permanent partial impairment of the body as a whole. There is a further 5 percent permanent partial impairment of the body as a whole secondary to the fact that he has had surgery on his neck and a 4 percent permanent partial impairment of the body as a whole secondary to the concussion (head). Therefore, it is my opinion that there is evidence of a 27 percent permanent partial impairment of the body as a

whole secondary to the conditions allowed within claim 84-39286." (Emphasis added.)

In his report, Dr. Steiman also states that:

"It is my opinion that there is no evidence of a permanent total *impairment*. I believe Mr. Noll is currently able to return to sustained remunerative employment when considering only the allowed disabilities within claim 84-39286. *In reaching my decision, I have not taken into account his age, work history or education.*" (Emphasis added.)

In *State, ex rel. Mitchell,* v. *Robbins & Myers, Inc.* (1983), 6 Ohio St. 3d 481, 483-484, 6 OBR 531, 533-534, 453 N.E. 2d 721, 724-725, this court stated that:

"* * * [W]e will, when necessary, henceforth grant a writ of mandamus directing the commission to specify the basis of its decision. Cf. *State, ex rel. Cox,* v. *Indus. Comm.* (1981), 67 Ohio St. 2d 235 [21 O.O. 3d 147]; *State, ex rel. GF Business Equipment, Inc.,* v. *Indus. Comm.* (1982), 2 Ohio St. 3d 86. In other words, district hearing officers, as well as regional boards of review and the Industrial Commission, must specifically state which evidence and only that evidence which has been relied upon to reach their conclusion, and a brief explanation stating why the claimant is or is not entitled to the benefits requested. Moreover, this court will no longer search the commission's file for 'some evidence' to support an order of the commission not otherwise specified as a basis for its decision.

"* * *

"We take this step, first and foremost, because the duty to so specify the basis for its decision is imposed upon the commission by statute. * * *

"Secondly, a decision of a district hearing officer, a regional board of review, or the commission which spe-cifically sets forth the basis for the decision will enable this court, as well as the Court of Appeals for Franklin County, to readily discern the specific grounds relied upon and whether the record supports such a finding when a party to the proceeding initiates an action for a writ of mandamus. Our task will be eased by a succinct statement setting forth only that evidence relied upon in reaching a decision and why the claimant was granted or denied requested benefits. In addition, and equally as important, those parties precluded from perfecting an appeal in accordance with R.C. 4123.519 will be better advised as to why a particular decision was reached."

Thus, *Mitchell* sets forth a requirement that the Industrial Commission specify the evidence upon which it relies in making its determinations and also requires the commission to briefly explain why the claimant is or is not entitled to the benefits requested.

In *Stephenson, supra,* we held that it was necessary for the Industrial Commission to "* * * look at the claimant's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record in making its determination of permanent total disability." *Id.* at 173, 31 OBR at 374, 509 N.E. 2d at 951. We reached this conclusion because it is the commission's duty to evaluate the evidence concerning the claimant's ability to continue to work. *Id.* at 170, 31 OBR at 372, 509 N.E. 2d at 949-950. Consideration of these nonmedical disability factors is pertinent to the determination whether a claimant is unfit to perform sustained remunerative employment or, in other words, whether the claimant can realistically return to the job market.

In *Stephenson,* we found no indication in the Industrial Commission's

order that it had considered these *Stephenson* factors in reaching its decision whether the claimant therein could return to any remunerative employment. As such, we remanded the cause to the commission for consideration of the *Stephenson* factors and (citing *Mitchell*) for the issuance of an amended order stating the commission's findings after consideration of the factors. *Id.* at 173, 31 OBR at 374-375, 509 N.E. 2d at 951. Presumptively, in *Stephenson*, we remanded the cause to the commission for the issuance of an amended order wherein the commission would consider the *Stephenson* factors and, in accordance with *Mitchell*, briefly explain or justify its ultimate decision.

However, in *Hartung*, this court apparently concluded that the Industrial Commission, in denying an application for permanent total disability compensation, need only acknowledge that it considered the *Stephenson* factors (if consideration of the factors was necessary at all) and that no explanation of how it applied the factors was necessary to justify its decision and to comply with *Mitchell. Id.* at 258, 560 N.E. 2d at 198. While I concurred with the majority in *Hartung*, I have reconsidered my position on this issue and have concluded that the Industrial Commission must specifically state how the *Stephenson* factors were applied to justify its decisions which deny (and in some cases grant) permanent total disability compensation to a claimant. I now reach this conclusion after having reviewed many other cases now pending before us involving this very issue and after realizing the potential for injustice caused by our decision in *Hartung*.

In my judgment, the failure of the Industrial Commission to fully explain the application of the *Stephenson* factors in denying (and in some cases

granting) a claim for permanent total disability compensation makes it impossible for this court to determine if any evidence exists to truly justify the commission's decision. This case is a prime example of the problem and in his learned opinion in the court of appeals, Judge John McCormac ably recognized where this path could lead and pointed out that a "boilerplate" recitation that the factors were considered was not good enough.

*Stephenson* provides for a set of pragmatic considerations or "factors" relevant to the determination whether a claimant can realistically return to any sustained remunerative employment. In *Stephenson*, we held that it was necessary for the Industrial Commission to consider these pragmatic concerns in discharging its duty of determining whether a claimant is permanently and totally disabled. *Id.* at 170, 31 OBR at 372, 509 N.E. 2d at 949. The Industrial Commission must, of necessity, consider these factors since medical capacity to work is immaterial if, for example, the claimant's age, experience or education forecloses such employment opportunities. See *State, ex rel. Lawrence,* v. *American Lubricants Co.* (1988), 40 Ohio St. 3d 321, 322, 533 N.E. 2d 344, 346. Thus, consideration of the *Stephenson* factors may override other evidence that a particular claimant can participate in sustained remunerative employment. As such, any evidence relied upon by the Industrial Commission in denying a claim for permanent total disability compensation must be considered in light of the *Stephenson* factors before it can become "some evidence" which would support the commission's determination.

For this or any other court to determine if some evidence exists which would support the commission's denial of permanent total disability

compensation, it is necessary to know not only that the commission considered the factors but, also, why it determined that the factors did not warrant an award of permanent total disability benefits. Only by requiring the commission to fully explain (in accordance with *Mitchell*) how it applied the *Stephenson* factors can this or any other court conduct a meaningful review. Such a requirement would also have the salient effect of apprising future litigants of how the commission applies the *Stephenson* factors. As I noted in my concurring opinion in *State, ex rel. Burley*, v. *Coil Packing, Inc.* (1987), 31 Ohio St. 3d 18, 22, 31 OBR 70, 73, 508 N.E. 2d 936, 939-940:

"The reporting requirements of *Mitchell* not only provide this court with the necessary tools to perform a meaningful mandamus review of the commission's determinations, but such reporting also lends a sense of predictability for claimants and employers alike in the disposition of disability claims. By providing the parties with a brief explanation as to how the various disability factors, such as age, education and work history, affect the *medically appraised* degree of impairment, the commission affords future litigants invaluable insight into its decision-making process. This insight should eventually translate into a more predictable and less litigious system." (Emphasis *sic*.)

For the reasons stated herein, I support the majority's affirmance of the judgment of the court of appeals requiring that the Industrial Commission either allow Noll's application for permanent total disability, or deny the application with a sufficient explanation of how it applied the nonmedical factors to support a denial. It is well to remember that we are dealing with the very existence of real live human beings who have suffered an industrial injury. They are not just another number to be dealt with in some perfunctory way. Surely it is not unreasonable, overburdensome or onerous to require the commission to set forth an explanation of how each of the *Stephenson* factors has been considered and why the applied factors, coupled with the medical impairment evidence, still do not entitle an injured claimant to permanent total disability.

Although I agree with much of what the majority says today, I disagree, in part, with the syllabus in this case which provides as follows:

"In *any* order of the Industrial Commission *granting or denying* benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision." (Emphasis added.)

I completely agree with the syllabus as it relates to all orders *denying* benefits since, as previously mentioned, medical capacity to work is immaterial if, considering the *Stephenson* factors, a claimant cannot realistically return to any sustained remunerative employment. I disagree with the syllabus, in part, as it relates to *all* orders *granting* benefits. If a claimant is *granted* benefits solely for the stated reason that he is medically incapable of work, consideration of the *Stephenson* factors cannot change that determination and an explanation of how the *Stephenson* factors were applied will be an exercise in futility.

SWEENEY, J., concurs in the foregoing concurring opinion.