[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 197.]

THE STATE EX REL. MENOLD, APPELLEE, *v.* MAPLECREST NURSING HOME;

INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

[Cite as *State ex rel. Menold v. Maplecrest Nursing Home*, 1996-Ohio-146.]

*Workers' compensation—Application for permanent total disability compensation—Medical report which predates claimed disability period is "some evidence" supporting Industrial Commission's denial of application, when.*

(No. 94-1255—Submitted March 19, 1996—Decided July 31, 1996.)

APPEAL from the Court of Appeals for Franklin County, No. 93AP-979.

———————————

{¶ 1} Appellee-claimant, Patricia Blangero Menold, was injured in the course of and arising from her employment with Maplecrest Nursing Home for the Aged. Appellant Industrial Commission of Ohio allowed claimant's workers' compensation claim for "low back sprain/strain." Although all treatment was conservative, claimant never returned to work.

{¶ 2} On November 20, 1989, claimant was examined on the commission's behalf by Dr. W. Jerry McCloud, who stated:

"There are no abnormalities in her gait pattern. The deep tendon reflexes to the knees and ankles are uniform both with and without augmentation. Each of the various radicular testing procedures are negative bilaterally in each of the various positions. A Bragard's test is also negative at the end of each of the testing procedures. There is no gradeable deficiency in the strength of the various muscle groups nor is there a dermatome type sensory discrepancy. The pelvis is level. The lumbar lordosis is well maintained and demonstrates good flexibility. Subjectively she demonstrates a uniform loss of roughly one half of her functional lumbar

reserve but does so without radicular complaints in each of the various directions. The paraspinous muscles do relax with this activity.

"This claimant does have loss of lumbar reserve but has otherwise normal physical evaluation. She would require restrictions against repetitive bending and lifting of objects whose weight would exceed an estimated twenty pounds, but I do not think other restrictions would exist. These restrictions would preclude certain of her work activities as a nurse[']s aide. Historically she relates to me that she has not improved to the point where she feels she can resume those activities.

"It is my opinion that this claimant does not demonstrate medical evidence consistent with considering her permanently and totally impaired. She is capable of sustained remunerative employment. She is not capable of her the [sic] entirety of 1985 work activities. The changes are permanent and she has reached a level of maximum medical improvement and demonstrates a permanent partial impairment of an estimated 30% of the body as a whole. Rehabilitation would not seem to be indicated as she is 63 years old."

{¶ 3} Eleven days later, claimant moved the commission for permanent total disability compensation. The November 8, 1989, report of. Joseph A. DiDomenico, D.C., was submitted in support of the motion. He reported:

"Claimant complains chiefly of constant lower back pain which radiates into her right hip and lateral thigh. She also experiences persistent numbness and tingling in her hip and thigh. Her condition is made worse with bending, lifting, twisting, pushing and pulling, sitting or standing for long periods of time. Cold and damp weather aggravate her condition. At times she needs assistance for ambulation.

"Examination: Examination reveals a loss of the normal lordosis. She ambulates with no significant abnormalities and has difficulty heel and toe walking with some discomfort. Range of motion shows flexion restricted to 45º and extension to 5º. Left and right lateral flexion were restricted 10 and 25º

2

respectively. Rotation was limited 15º bilaterally. There is tenderness to palpation over the lumbar paravertebral musculature. There is involuntary spasm over the same. She was positive for Sitting Lasegue, Kemps to the right and Yeoman. Straight leg raise was limited to 40º right and 50º left. Braggard [*sic*, Bragard's test or sign] was negative. Deep tendon reflexes were graded at 1/4 bilaterally of the lower extremities. Circulation was adequate. Manual muscle testing shows the right dorsiflexors approximately 15º weaker than its opposing members.

"After considering the claimant's age of 63 yrs., education level of 12 grades, and work experience as a nurse's aid[e], her subjective and objective findings, it is my opinion that the claimant is permanently and totally disabled from gainful employment."

**{¶ 4}** Based on Dr. McCloud's report, the commission on April 18, 1990 denied permanent total disability compensation. Two months later, claimant reapplied for permanent total disability compensation. Dr. DiDomenico's June 11, 1990 report was submitted in support of the second application. It read:

"* * * Presently she complains of constant lower back pain which radiates to her right hip and thigh. She also complains of numbness, tingling and occassional [*sic*] buckling of the knee. Her condition is made worse with bending, lifting, twisting and prolonged sitting and standing.

"Examination: Examination of lumbar spine reveals a loss of the normal lumbar lordosis. She ambulates with no significant abnormalities, but has difficulty heel and toe walking. Lumbar range of motion shows flexion 45º and extension 20º. She is able to laterally flex to the left 15° and 10º to the right. She is able to rotate to the right 25ºand to the left 15º. There is tenderness to palpation over the lumbosacral region and lumboparaspinal musculature. Straight leg raise was positive 30ºon the right and negative at 60º on the left. She was negative for Braggards [*sic*, Bragard's]. She was positive for sitting Lase[g]ue on the right and

also Kemps.  Manual muscle testing showed the right dorsiflexors graded at 4/5, all other muscle groups were 5/5.  Since re-evaluation to the Wartenburg pinwheel found slight decrease over the S1 dermatome level on the right as compared to his [*sic*] opposing the member.

"After considering the patient's age of 63 years[,] education level of 12 and limited work experience as a nurse's aid[e] it is my opinion that the claimant is permanently and totally disabled from any and all gainful employment."

{¶ 5} Dr. David M. Baroff reported the following, based on a November 29, 1990 examination:

"On physical examination, she * * * walks with a normal gait and gets up on her heels and toes easily.  She can flex forward 50º at the lumbar spine. Extension and lateral bending are 15 degrees in each direction.  She is not tender and there is no muscle spasm palpated in the lumbar spine.  She has mild right sacroiliac tenderness and mild right sciatic notch tenderness.  The strength in the legs is normal, reflexes are 1+ at the knees, absent at the ankles, sensation is intact to touch and pin prick.  Straight leg raising does not reproduce leg pain on either side.  X-rays of her lumbar spine demonstrate diffuse osteopenia and degenerative joint disease of the facets of the lower three motion segments.

"IMPRESSION

"Chronic lumbar strain with current evidence of degenerative arthritis of the lumbar spine seen on the x-ray.

"In my opinion, this lady's condition of lumbar strain and sprain is permanent and does permanently prevent her from returning to her former position of employment as a nurse's aide.  Furthermore, as a result of her inability to sit or stand for any prolonged period of time, as a result of her lumbar strain, she is not a candidate for any sustained remunerative employment.  She has little rehabilitative potential at this time and I would say that her condition is now permanent and total.

In my opinion as a result of her allowance the lumbar strain, this lady has a permanent partial impairment of 15% of the whole person."

**{¶ 6}** Vocational consultant John Ruth submitted a report that concluded that claimant's physical condition and "stamina limitations" would limit her to sedentary employment. He also reported:

"[Claimant's] age (63) would significantly deter an employer from hiring her. Through approximately 15 years of vocational services to clients of all ages[,] it has been this evaluator[']s experience that individuals who are in the closely approaching retirement age category do not secure competitive employment as there is a large supply of younger individuals in the work force who are more able-bodied, possess equal skills, and will be around for a longer period of time (to invest in employer[']s training, money and time into).

"* * *

"* * * Since this individual demonstrated an inability to perform work for even brief periods of time[,] [in] the positions of overhead, crouched or standing, it does not appear as though it would be feasible for this individual to transfer to [other jobs mentioned in the report]. Overall, this individual[']s age an[d] inability to work in various planes appear to be major barriers to employment. For this reason, it is this evaluator's opinion that Ms. Blangero [claimant] would be unable to seek or sustain remunerative employment at this time."

**{¶ 7}** The commission again denied compensation for permanent total disability. In a mandamus action brought by claimant, the Court of Appeals for Franklin County ordered the commission to vacate its order and issue a new order in compliance with *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245. *State ex rel. Blangero v. Indus. Comm.* (Sept. 17, 1992), Franklin App. No. 91AP-1427, unreported.

**{¶ 8}** In June 1993, the commission again denied compensation for permanent total disability, stating:

"The reports of Doctor(s) McCloud, Baroff, DiDomenico, Ruth were reviewed and evaluated. The order is based particularly upon the reports of Doctor(s) McCloud, evidence in the file, and/or evidence adduced at the hearing.

"In reviewing the medical evidence relevant to the instant application, the Commission finds most persuasive the report of Dr. McCloud as to the claimant's medical presentation from the allowed conditions in the claim. This report relates that the claimant's functional limitations preclude all work activities where repetitive bending and lifting of objects whose weight exceeds 20 lbs[.] are in[v]olved. This Commission finds this report to relate that the claimant can perform light duty employment. A review of the claimant's vocational presentation relates that she is able to perform such work activity. Noteably [sic], the Commission finds that the claimant's vocational history as a salesperson, her high school education and her ability to operate her own business relates [sic] that she would be able to adapt to the duties and demands of light duty employment and any associated vocational retraining. As such, the Commission finds that the claimant is capable of engaging in sustained remunerative employment."

{¶ 9} Claimant again filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in denying permanent total disability compensation. The appellate court agreed, writing:

"Dr. McCloud's report indicates that Ms. Menold had lost some flexibility in her back, but nothing else. Dr. Baroff found not only a loss of lumbar reserve but 'mild right sacroiliac tenderness,' 'mild right sciatic notch tenderness,' 'diffuse osteopena,' and 'degenerative joint disease of the facets of the lower three motion segments.' The history given by Dr. Baroff is indicative of nerve root involvement because of claimed intermittent feelings with numbness in the right thigh. In short, Dr. Baroff found several relevant medical conditions in 1990 which Dr. McCloud did not find in 1989. Dr. McCloud's report does not constitute 'some evidence' as

to the medical conditions which he did not find to be in existence seven months before Ms. Menold filed her second application for permanent total disability compensation.

"The commission cannot rely solely on the report of Dr. McCloud under the circumstances. In fact, Ms. Menold's work related physical problems apparently have increased in the intervening time."

{¶ 10} The court ordered the commission to vacate its order, reconsider the application and issue an amended order explaining its consideration of all pertinent factors pursuant to *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 31 OBR 309, 509 N.E.2d 946, and complying with *State ex rel. Noll v. Indus. Comm.* (1994), 57 Ohio St.3d 203, 567 N.E.2d 245.

{¶ 11} This cause is now before this court upon an appeal as of right.

_____

*Green, Haines, Sgambati Murphy & Macala Co., L.P.A., Ronald E. Slipski* and *Steven L. Paulson*, for appellee.

*Betty D. Montgomery*, Attorney General, and *Philip J. Gauer*, Assistant Attorney General, for appellant.

_____

**PFEIFER, J.**

{¶ 12} We are asked to determine whether Dr. McCloud's report is "some evidence" supporting the commission's order. For the reasons to follow, we find that it is.

{¶ 13} The commission is exclusively responsible for judging evidentiary weight and credibility. *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936. Claimant's contention that McCloud's report is nonprobative simply because it predates the claimed disability period lacks merit. Certainly, the probative value of a medical report may be lessened by later changes in the claimant's condition, and the longer the time between the report and

the disability alleged, the more likely this is to have occurred. Claimant, however, has failed to show that McCloud's report was no longer probative.

{¶ 14} In this case, it must be remembered that claimant first claimed permanent total disability compensation on December 1, 1989. Permanent total disability compensation was denied on April 18, 1990 and claimant reapplied less than two months later. Because of the extremely short time between denial and reapplication, it is reasonable to say that claimant has been alleging permanent total disability consistently since December 1, 1989. In other words, the condition alleged in 1990 was no different from that alleged in 1989, and McCloud's report preceded claimant's original application for permanent total disability compensation by only eleven days. Claimant cannot, therefore, sustain her claim of staleness.

{¶ 15} Equally important, the court of appeals never reconciled its conclusion that Baroff demonstrated a significant physical worsening with the fact that Baroff's impairment figure was only half of what McCloud had observed the previous year. This suggests improvement, not decline. Comparison of other medical evidence reinforces this conclusion. The 1989 and 1990 reports of Dr. DiDomenico -- claimant's own doctor -- are almost identical. This again negates the suggestion that claimant's condition had appreciably worsened over the relevant time frame.

{¶ 16} The court of appeals found that Dr. Baroff's later report rendered Dr. McCloud's report no longer probative because Baroff's narrative listed "several relevant" findings that had arisen since McCloud's examination. We disagree. Baroff's reference to "diffuse osteopenia" and "degenerative joint disease" is irrelevant, since the claim is allowed only for a simple strain/sprain. Moreover, when the two reports are closely compared, they are actually very similar. Identical findings include: (1) normal gait; (2) absence of radiating pain; (3) uniform deep tendon reflexes; (4) no muscle spasm; (5) limited flexion; (6) normal leg strength;

and (7) negative radicular testing. The only significant differences between the two are Dr. Baroff's findings of <u>mild</u> sacroiliac tenderness and <u>mild</u> sciatic notch tenderness. These discrepancies do not support the appellate court's conclusion that claimant's condition worsened so dramatically between the time of the Baroff and McCloud exams as to make the latter's report nonprobative.

{¶ 17} Having found that Dr. McCloud's report is "some evidence" supporting the commission's order, we turn finally to the question of *Noll* compliance. In this case, the order's explanation, although brief, adequately sets forth the reasoning underlying the commission's decision. It indicates that, based on the medical and other evidence, claimant's physical restrictions were so insignificant as to allow for reemployment despite an age and work history that are not necessarily conducive to retraining. *Noll* has accordingly been satisfied.

{¶ 18} We therefore reverse the judgment of the court of appeals.

*Judgment reversed.*

MOYER, C.J., RESNICK, COOK and STRATTON, JJ., concur

DOUGLAS, J., dissents.

F.E. SWEENEY, J., dissents and would affirm the judgment of the court of appeals.

————————————