DECISION
{¶ 1} Relator, Billy J. Stinson, brought this original action in mandamus requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to grant his application *Page 2 
and, alternatively, requesting that a writ issue ordering the commission to issue an order which complies with the requirements ofState ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203. This case was, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of this court, referred to a magistrate who has rendered a magistrate's decision finding that the requested writ of mandamus should be denied. (Attached as Appendix A.)
 {¶ 2} Relator has filed three objections to the magistrate's decision. The first objection contends that the magistrate made an erroneous conclusion of law in relying upon State ex rel. Menold v. MaplecrestNursing Home, 76 Ohio St.3d 197, 1996-Ohio-146, to find that the commission complied with Noll and State ex rel. Mitchell v. Robbins Myers, Inc. (1983), 6 Ohio St.3d 481. The second objection is that the magistrate's decision did not address relator's argument that the commission abused its discretion by finding that relator did have opportunities for gainful employment. Relator's third objection is that the magistrate erroneously concluded that, without evidence of a worsening of relator's psychological condition, the commission's decision denying his application for PTD compensation did not constitute an abuse of discretion.
 {¶ 3} After an independent review of the stipulated evidence and the applicable law, this court concludes that the magistrate correctly found the salient facts and applied the applicable law thereto.
 {¶ 4} Relator sustained injuries in the course of his employment with respondent-employer, Dugan Meyers, on October 5, 1984. Relator applied for workers' compensation benefits, which application was granted, and relator's claim was initially recognized for sprain of lower back, and subsequently recognized for herniated nucleus pulposus and major depression. Relator was paid the then statutory maximum award of *Page 3 
$17,500, the last payment being issued on February 22, 1991. On August 8, 2002, relator filed an application for PTD compensation. The application was denied. On August 11, 2004, relator's motion to have his claim additionally recognized for degenerative disc disease was granted by the Bureau of Workers' Compensation ("BWC"). On October 20, 2004, relator requested that he be referred for vocational rehabilitation, which was denied because relator did not meet the eligibility requirements for vocational rehabilitation. After a district hearing officer ("DHO") ordered the administrator to refer relator for evaluation for rehabilitation services, the BWC, on February 2, 2005, made a finding that relator was not feasible for vocational rehabilitation for several reasons. On March 13, 2006, relator filed his third application for PTD compensation supported by medical reports of Drs. Sid Shih and Bal K. Bansal. On June 19, 2006, relator was evaluated for a recognized psychological condition by Dr. Mable Rowe Lineberger at the request of the commission. Dr. Lineberger rendered an opinion that relator was permanently and totally disabled due to his worsening psychological condition. Nevertheless, a staff hearing officer ("SHO") for the commission denied relator's application. Relator's motion for reconsideration was denied by order of the commission on November 1, 2006. Relator then filed this action in mandamus. The SHO's finding states that:
 Based on the 03/21/2005 report from Dr. Allen, the 03/29/2005 report from Dr. Ross, and the 06/06/2006 report from Dr. Garman, which are persuasive, the Staff Hearing Officer finds that when only the impairment arising from the allowed conditions is considered, the injured worker has the residual functional capacity to perform a variety of work activities. Further, it is found that when his degree of medical impairment is considered in conjunction with his non-medical disability factors, the injured worker is capable *Page 4 
of sustained remunerative employment and is not permanently and totally disabled. * * *
 {¶ 5} The SHO, in his findings, did not mention or refer to the report of Dr. Lineberger, to whom relator had been referred for psychological examination. But, instead, relied upon the earlier March 21, 2005 report of Dr. Timothy Allen, who rendered the opinion that relator's psychiatric condition would not prevent him from returning to a former position of employment and that relator had a ten percent permanent partial impairment on the psychiatric condition. Although the SHO did not mention or refer to Dr. Lineberger's report, he was not required to do so because the commission is not required to explain why it finds one report more persuasive than another. See State ex rel. DeMint v. Indus.Comm. (1990), 49 Ohio St.3d 19, and State ex rel. Lovell v. Indus.Comm., 74 Ohio St.3d 250, 1996-Ohio-321. Accordingly, relator's first objection is not well-taken.
 {¶ 6} Relator's second objection pertains to his request for rehabilitation services. The BWC, on February 4, 2005, reviewed relator's request and found that he was not eligible for vocational rehabilitation services and that such services were not feasible for him for several reasons, including his age, 64 years of age. Even assuming that relator's contention that his physical and psychological impairments do not disqualify him for rehabilitation services, there remains the finding by the BWC that he is not eligible for such services. Relator has pointed to nothing which demonstrates that the BWC was incorrect in this finding. Accordingly, relator has not demonstrated a clear legal right to receive rehabilitation services since he has not demonstrated that he is eligible for such services. Relator's second objection is not well-taken.
 {¶ 7} Relator's third objection contends that the magistrate was incorrect in finding the facts of this case similar to those inMenold, supra. We find no merit to *Page 5 
relator's contention. The magistrate did not suggest that the facts inMenold were identical to those in this case, but found that they were sufficiently similar so as to be applicable here. We agree. Relator's third objection is not well-taken.
 {¶ 8} For the foregoing reasons, this court overrules all three of relator's objections to the magistrate's decision, and adopts the magistrate's factual findings and conclusions of law as those of this court. For these reasons, the requested writ of mandamus is denied.
Objections overruled, writ of mandamus denied.
SADLER, P.J., and TYACK, J., concur.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 6 
 APPENDIX A IN MANDAMUS {¶ 9} Relator, Billy J. Stinson, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total *Page 7 
disability ("PTD") compensation, and ordering the commission to grant his application. In the alternative, relator requests a writ of mandamus ordering the commission to issue an order which complies with the requirements of State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
Findings of Fact:
 {¶ 10} 1. Relator sustained a work-related injury on October 5, 1984, and his claim has been allowed for "sprain right lower back; herniated nucleus pulposus; major depression; lumbar degenerative disc disease L5-S1."
 {¶ 11} 2. At the time of his injury, relator was 42 years old. Relator has not worked since the date of injury.
 {¶ 12} 3. Relator filed his first application for PTD compensation on August 8, 2002. That application was denied in February 2003.
 {¶ 13} 4. Following the denial of his first application for PTD compensation, relator contacted the Ohio Bureau of Workers' Compensation ("BWC") and indicated that he was interested in vocational rehabilitation. At the time, relator was 62 years old.
 {¶ 14} 5. By order mailed October 29, 2004, the administrator of the BWC informed relator that he was not eligible for vocational rehabilitation because he did not meet the eligibility criteria of Ohio Adm. Code 4123-18-03.
 {¶ 15} 6. Relator filed an appeal from the administrator's denial and the matter was heard before a district hearing officer ("DHO") on January 10, 2005. The DHO vacated the prior order of the administrator and ordered that relator be referred for evaluation for rehabilitation services. *Page 8 
 {¶ 16} 7. Relator was evaluated and, by letter dated February 4, 2005, it was determined that relator was neither eligible for vocational rehabilitation services nor were such services feasible. This decision was based in part upon the fact that relator had not received any compensation since 1987, did not have a permanent partial award, and his treating physician had not indicated that he had reached maximum medical improvement ("MMI"). Other reasons cited for the denial were:
 * * * Mr[.] Stinson['s claim] has been allowed for depressive psychosis, depressive disorder, disc displacement, lumbar disc displacement and degenerative disc disease L5-S1. He also has some non allowed conditions including cardiac myopathy and arthritis of the hip. The cardiac myopathy affects his stamina and the hip arthritis, as well as the disc displacement and degenerative disc disease, affects his standing and walking ability. Although an IME by Dr[.] Ruth dated 10-25-02 indicated from a psychiatric point of view, he is able to resume prior jobs, Dr[.] Sid Shih on July 10, 2002 says he is permanently disabled from a psychiatric standpoint. His prior jobs were construction, working in Indiana steel mills, road surveyer [sic], a union carpenter, time keeper and bill collector. His physical demand level is at light duty and all the jobs except time keeping and bill collecting are medium too [sic] heavy duty. He may have been able to return to one of those jobs after injury but he did not. He presently is receiving SSDI benefits from Social Security. He has not worked for 20 years. He is 62 years old and he lives in a rural area where employment is limited. For these reasons[,] I do not feel he is feasible and that voc rehab is not appropriate at this time.
 {¶ 17} 8. Relator filed his second application for PTD compensation on December 13, 2004. Relator submitted a report from Sid Shih, M.D. With regard to relator's allowed psychological condition, Dr. Shih's treatment plan for relator included supportive therapy and medications. Relator also submitted reports from Bal K. Bansal, M.D., who examined relator for his allowed physical conditions. Dr. Bansal opined that relator was totally and permanently disabled due to all his allowed conditions. *Page 9 
 {¶ 18} 9. An independent psychiatric evaluation was performed by Timothy Allen, M.D., in March 2005. Dr. Allen identified the medical evidence which he reviewed including reports related to relator's allowed psychological condition. Following his assessment of relator, Dr. Allen concluded that relator "over-reported symptoms on numerous psychological measures while in our office. Therefore, his subjective complaints have to be evaluated with caution. Mr. Stinson expressed displeasure with the legal process that he was involved in and distrust of the Industrial Commission in particular. Such resentment could affect the veracity of current claims." Ultimately, Dr. Allen assessed a ten percent whole person impairment. Dr. Allen referred relator to John D. Ranseen, Ph.D., who administered certain tests and came to the conclusion that relator "clearly tried to dramatize the extent and severity of his physical and psychological problems. This is not a particularly unusual finding in this population given the context of this assessment. However, it does highlight a need to carefully evaluate the actual objective evidence for his pain complaints. Quite frankly, his self-report on tests was in rather marked contrast to his behavioral presentation during the course of the evaluation." Based upon his own evaluation and the conclusions of Dr. Ranseen, Dr. Allen concluded that relator could return to any of his former positions of employment or any other sustained remunerative employment for which he was otherwise qualified.
 {¶ 19} 10. An independent medical examination was performed by James K. Ross, M.D., in March 2005. After providing his physical findings upon examination, Dr. Ross opined that relator's allowed physical conditions had reached MMI, assessed a ten *Page 10 
percent whole person impairment, and concluded that relator was capable of performing at a sedentary work level.
 {¶ 20} 11. Relator's second application for PTD compensation was heard before a staff hearing officer ("SHO") on May 31, 2005, and resulted in an order denying the application. The SHO relied upon the reports of Drs. Ross, Allen and Ranseen and concluded that relator was capable of performing at a sedentary work level. The SHO concluded that relator's age of 62 was a neutral factor and that many older adults remain employed into their 70s. The SHO concluded that relator had time to obtain sedentary employment such as "telephone solicitor, a store greeter, assembler of light weight objects, etc. These positions would require brief on-the-job training and are within the claimant's educational/intellectual abilities." The SHO concluded that relator's educational history was a neutral factor for the following reasons:
 * * * [C]laimant was able to complete his high school education as far as his course work was concerned, but that he did not obtain his degree because he chose to leave school when he became "fed up" with it. He has not attempted to obtain his GED, nor has he sought any other form of training that may have made him more marketable in the workforce.
 {¶ 21} Thereafter, the SHO noted that following the denial of relator's first application for PTD compensation, relator had inquired about vocational rehabilitation; however, vocational rehabilitation services were denied. The SHO concluded that relator was rejected as a viable candidate due to his failure to meet the eligibility requirements and not because of his physical and/or psychiatric conditions. The SHO concluded:
 While the claimant's age, education and work experience do not prevent him from performing some sustained remunerative *Page 11 
employment at the sedentary level, it is found that his failure to do so has primarily resulted from the choices that he has made over the course of his life, rather than the physical/psychiatric residuals of his industrial injury.
 Finally, although the claimant submitted to examinations by three Industrial Commission specialists, they all raised significant questions as to the claimant's effort to respond honestly to both physical and psychiatric testing. It is found that the claimant's actions have undermined a bonafide effort to fully and accurately assess his ability to return to the workforce. It would be inappropriate for him to benefit from such actions.
 {¶ 22} 12. Relator filed his third application for PTD compensation on March 13, 2006. Relator attached the reports of Drs. Shih and Bansal. With regard to his psychological condition, Dr. Shih's treatment plan included supportive therapy and medication. Dr. Bansal concluded that relator was permanently and totally disabled due to all his allowed conditions.
 {¶ 23} 13. An independent medical examination was performed by Ray F. Garman, M.D., in May 2006. After listing the medical records which he reviewed and addressing their conclusions, Dr. Garman provided his physical findings upon examination. Thereafter, Dr. Garman concluded that relator's allowed physical conditions had reached MMI, assessed a ten percent impairment, and concluded that relator was capable of performing at a sedentary work level provided he had the ability to change positions as desired.
 {¶ 24} 14. An independent psychiatric evaluation was performed by Mable Rowe Lineberger, Ph.D., in June 2006. At the outset of her report, Dr. Lineberger specifically noted that relator's "self-reports were accepted as reliable since they were consistent with past reports, present test results, and observations." Ultimately, Dr. Lineberger *Page 12 
concluded that relator's allowed psychological condition had gradually worsened over the past 20 years and he had a moderate impairment, meaning that claimant's level of psychological functioning was considered to be compatible with some, but not all, useful function. Dr. Lineberger concluded that his allowed psychological condition had reached MMI and he was permanently and totally incapable of work. She stated that relator would most likely have extreme difficulty coping adequately in the workplace due to the following factors: "(1) the negative impact of significant emotional distress on cognitive processing; i.e., difficulties focusing attention and concentrating, decreased memory, and mental disorganization; and (2) lack of impulse control with a high level of angry and irritable feelings, contributing to severe problems getting along with others, as needed on a job."
 {¶ 25} 15. Relator's third application for PTD compensation, which is the subject of this mandamus action, was heard before an SHO on August 22, 2006, and resulted in an order denying the application. The SHO relied upon the medical reports of Drs. Garman and Ross for the conclusion that, from a physical standpoint, relator was capable of performing at a sedentary work level. With regard to relator's psychological condition, the SHO again relied upon the report of Dr. Allen and concluded that his March 2005 report was still viable. The SHO explained:
 The injured worker filed previous IC-2 applications 08/08/2002 and 12/13/2004 in addition to the current 03/13/2006 application. The Commission medical reports from the 12/13/2004 application are found by the Staff Hearing Officer to still be valid. The Commission medical reports from Dr. Allen, discussed above, and a report from Dr. Ross, discussed below, were issued less than one year prior to the current 03/13/2006 IC-2 application. *Page 13 
 In State ex rel. Menold v. Maplecrest Nursing Home (1996), 76 Ohio St. 3d 197 the Commission placed reliance on a medical report that was 3 1/2 years old at the time of the Commission order. One aspect on which the Court focused was the small length of time of the refilling of the IC-2 application. In this regard, the Court stated "Permanent total disability compensation was denied on April 18, 1990 and the claimant re-applied less than two months later. Because of the extremely short time between denial and re-application, it is reasonable to say the claimant has been alleging permanent total disability consistently since December 1, 1989" Id at 202. In the matter at hand there is 6 1/2 months between denial of an IC-2 and the current IC-2 application. However, the Dr. Allen report is much more current to this order than was the report to the Commission's decision in Menold, one year to three and 1/2 years. The Menold Court, also felt the appellee had failed to show that the report used in reliance by the Commission was non-probative. Id at 202.
 {¶ 26} Thereafter, the SHO addressed the nonmedical disability factors. The SHO found that relator's age of 64 was a negative factor because it is an age at which one has limited abilities to learn new skills. The SHO noted also that relator's lack of a high school education was a mild negative factor. With regard to relator's previous work history, the SHO noted:
 * * * The injured worker, however, has training as a carpenter and as a welder. Although, he would not be expected to be able to work as a construction carpenter, the skills he possesses could be transferred to lighter types of work involving carpentry. His experience as a time checker was described on the IC-2 application as handing out men's badges and checking for workers on the job. This is in the realm of the injured worker's physical ability. In his job as a bill collector the IC-2 application indicates the use of a calculator, adding machine, and telephone, as well as completing office forms. Although, the injured worker's opportunities for retraining and for immediate employment are limited, they do exist. *Page 14 
 {¶ 27} 16. Relator filed a motion for reconsideration arguing that the commission had failed to explain why the report of Dr. Lineberger was neither considered nor relied upon.
 {¶ 28} 17. By order mailed November 1, 2006, the commission denied relator's request for reconsideration.
 {¶ 29} 18. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 30} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 31} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, *Page 15 
the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel.Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. Noll, supra.
 {¶ 32} Relator contends that he has a clear legal right to a writ of mandamus for the following three reasons: (1) the commission failed to note, acknowledge, or analyze the psychological report from Dr. Lineberger; (2) the commission misapplied the decision from State exrel. Menold v. Maplecrest Nursing Home (1996), 76 Ohio St.3d 197; and (3) the commission's analysis of the nonmedical factors was deficient. For the reasons that follow, it is this magistrate's conclusion that this court should deny relator's request for a writ of mandamus.
 {¶ 33} Pursuant to the requirements of State ex rel. Mitchell v.Robbins Myers, Inc., (1983), 6 Ohio St.3d 481, and Noll, the commission is required to cite the evidence relied upon in reaching its decision. The commission is not required to enumerate all the evidence considered nor is the commission required to explain why it finds one report to be persuasive over another. See, e.g., State ex rel. DeMint v.Indus. Comm. (1990), 49 Ohio St.3d 19, and State ex rel. Lovell v.Indus. Comm. (1996), 74 Ohio St.3d 250. As such, relator's first argument, that the commission failed to acknowledge the report of Dr. Lineberger, lacks merit.
 {¶ 34} In the present case, in denying his third application for PTD compensation, the SHO relied upon a psychological report which had previously been relied upon in *Page 16 
denying relator's second application for PTD compensation. The SHO relied upon the Menold case and noted that the report of Dr. Allen was prepared one year before relator filed his third application for PTD compensation while the report the commission relied on inMenold was three and one-half years old.
 {¶ 35} Although the magistrate finds that the commission's determination concerning the age of the report relied on inMenold is not quite accurate, the magistrate finds that the reasoning for Menold does apply in the present case and the commission did not abuse its discretion in relying upon the report of Dr. Allen.
 {¶ 36} In Menold, the claimant was examined in November 1989 by Dr. McCloud who opined that she was not permanently and totally disabled. In a report from November 1989, Dr. DiDomenico opined that the claimant was permanently and totally disabled. The claimant filed her first application for PTD compensation in November
1989. In April 1990, the commission denied the claimant's first application based upon the November 1989 report of Dr. McCloud.
 {¶ 37} Two months later, in June 1990, the claimant filed her second application for PTD compensation. The claimant submitted the June 1990 report of Dr. DiDomenico which was very similar to his November 1989 report. Dr. DiDomenico again concluded that the claimant was permanently and totally disabled. In November
1990, the claimant was examined by Dr. Baroff who concluded that the claimant was permanently and totally disabled. In June 1991, the claimant's second application for PTD compensation was denied based upon the report of Dr. McCloud. At that time, the report of Dr. McCloud was one and one-half years old. *Page 17 
 {¶ 38} The claimant filed a mandamus action in this court which was granted in 1992. Later in 1992, the commission issued an amended order again denying PTD compensation based upon the report of Dr. McCloud. At this time, the report of Dr. McCloud was approximately three and one-half years old. The claimant filed another mandamus action in this court and a writ was granted in 1994. The matter was then appealed to the Supreme Court of Ohio.
 {¶ 39} In Menold, the Supreme Court of Ohio noted that the issue the court was asked to determine was whether Dr. McCloud's report constituted some evidence supporting the commission's order. For the following reasons, the court found that the report of Dr. McCloud did constitute some evidence. First, the court noted that the claimant's first application was filed in December 1989 and PTD compensation was first denied in April 1990. Less than two months later, in June 1990, the claimant reapplied for PTD compensation. The court noted that because there was an extremely short period of time between the commission's denial and the claimant's reapplication for PTD compensation, it was reasonable to conclude that the claimant had been alleging that she was permanently and totally disabled since she filed the first application in December 1989. The court concluded that claimant's condition alleged in 1990 was no different from her condition alleged in 1989. The court also noted that this court had found that, while Dr. Baroff opined that the claimant was permanently and totally disabled, the level of impairment he opined was only half of the level of impairment opined by Dr. McCloud. This court indicated that the smaller level of impairment suggested improvement, and noted that the 1989 and 1990 reports of Dr. DiDomenico, *Page 18 
the claimant's own doctor, were almost identical. This negated the suggestion that the claimant's condition had appreciably worsened.
 {¶ 40} As stated previously, the commission noted that inMenold, the report of Dr. McCloud was three and one-half years old at the time the claimant's application for PTD compensation was denied. However, that denial was occasioned after the filing of a writ of mandamus wherein the claimant was successful. In 1991, when the claimant's second application for PTD compensation was originally denied, the report of Dr. McCloud was one only and one-half years old.
 {¶ 41} In the present case, the report of Dr. Allen (March 16, 2005), was 17 months old when it was used to deny relator's third application for PTD compensation (August 22, 2006). Further, at the time relator filed his third application for PTD compensation, the report of Dr. Allen was only one year old. Also, relator did not file any additional evidence asserting that his allowed psychological condition had worsened. Instead, the only evidence in the record that relator's psychological condition had worsened was from Dr. Lineberger, an independent medical evaluator. As noted in the findings of fact, Dr. Lineberger accepted all relator's self-reporting as true while Dr. Allen, who relied in part upon the report of Dr. Ranseen, concluded that relator exaggerated his symptoms.
 {¶ 42} The magistrate finds the fact that Dr. Allen's report was only one year old when relator filed his third application for PTD compensation coupled with the fact that relator did not submit any additional medical evidence asserting that his psychological condition had worsened, and that Dr. Allen's report was only 17 months old at the time the commission ultimately denied his third application for compensation, the report of *Page 19 
Dr. Allen did constitute "some evidence" upon which the commission could rely. Relator had been asserting that he was permanently and totally disabled due to the allowed physical conditions from August 2002. Further, relator did not submit any medical evidence indicating that his physicians believed his allowed psychological condition rendered him permanently and totally disabled. The magistrate refers to the report of Dr. Allen wherein he summarized the medical evidence relator provided him to review regarding his allowed psychological condition. Dr. Allen noted that relator's evidence included the following:
 Doug Ruth, M.D.: 10/25/02. Dr. Ruth diagnosed Mr. Stinson with panic disorder and major depression and reported a 5% total psychiatric impairment only 1% of which was directly related to his work injury.
 Lewis Rose, M.A. psychologist. Initial evaluation dated 10/11/89 gave a diagnosis of Major Depression and Panic Disorder. A letter on 2/9/90, recommended medication treatment as well as ongoing therapy.
 Dick Larumbe M.D. Initial evaluation on 7/18/90 diagnosed Mr. Stinson with Major Depression and Panic. He started Pamelor. Follow-up visits on 8/23 and 9/14/90 reported improvement.
 {¶ 43} None of relator's medical evidence found him permanently and totally disabled from a psychological standpoint. Further, as noted in the findings of fact, in February 2006, Dr. Shih did not say that relator's allowed psychological condition rendered him permanently and totally disabled; instead, his report notes only that relator needs supportive therapy and medication. As such, relator has failed to show that Dr. Shih's report was probative of the issue. *Page 20 
 {¶ 44} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying her application for PTD compensation and relator's request for a writ of mandamus should be denied. *Page 1