{¶ 13} While I agree with the lead opinion that this matter be returned to the commission, I do so for somewhat different reasons, and I therefore concur separately.
 {¶ 14} Initially, although I cannot say the job search during time period between claimant's lay-off and the start of his job with Metokote is irrelevant, it has lesser, not *Page 6 
greater, significance here where claimant did not seek working wage loss for that period of time. Rather, the issue is whether the order granting working wage loss from August 2006 forward is appropriate under the parameters governing such awards.
 {¶ 15} "Receipt of wage loss compensation hinges on whether there is a causal relationship between injury and reduced earnings. The requirement of a causal relationship is often satisfied by evidence of an unsuccessful search for other employment at the pre-injury rate of pay."State ex rel. Internatl. Truck Engine Corp. v. Indus. Comm., Franklin App. No. 05AP-1337, 2006-Ohio-6255, at 1J2.
 {¶ 16} "[U]nder certain limited circumstances a claimant may be excused from the obligation to conduct a good faith job search and retain eligibility for wage loss compensation. For example, where the claimant receives other significant employment benefits from a lower paying job (unrelated to a lifestyle choice), it is inappropriate to ask a claimant to `leave a good thing' solely to narrow a wage differential." Id. at ¶ 3, citing State ex rel. Timkin v. Kovach,99 Ohio St.3d 21, 2003-Ohio-2450, at ¶ 19-28, citing State ex rel. Brinkmanv. Indus. Comm. (1999), 87 Ohio St.3d 171.
 {¶ 17} "In determining whether to excuse a claimant's failure to search for comparably paying work, the commission must use a `broad based analysis' that looks beyond mere wage loss." Id., citingTimkin, at ¶ 19-28. "This broad based analysis requires the commission to look at a variety of factors in assessing whether the `claimant's job choice was motivated by an injury-induced unavailability of other work and was not simply a life style choice.'" Id., quoting Timkin, citingState ex rel. Jones v. Kaiser Found. Hosp. Cleveland (1999),84 Ohio St.3d 405, 407. *Page 7 
 {¶ 18} The award here breaks down into two categories: claimant's work with Metokote, and his work with Knights Facility. Under the noted case law, claimant had some obligation to pursue some form of job search, the extent of which is dictated by the circumstances of the case, even after taking the job with Metokote unless the evidence permitted a broad-based analysis as described in Timken, at ¶ 22-28. Although the staff hearing officer alludes to such an analysis in awarding claimant working wage loss, the order does not delineate the evidence on which the staff hearing officer relied to reach that conclusion. See State ex rel. Nollv. Indus. Comm. (1991), 57 Ohio St.3d 203, 205.
 {¶ 19} As to claimant's subsequent position with Knight's Facility, I am unable to agree with the staff hearing officer's suggestion that because claimant is restricted to a 40-hour work week, claimant is excused from all duty to conduct a job search. Unless the evidence supports a broad-based analysis that excuses claimant from continuing a job search, some job search seems necessary under the existing case law. Although the 40-hour work restriction may affect the extent of claimant's job search, it does not eliminate it unless medical evidence supports such a conclusion, and the staff hearing officer does not cite any medical evidence to suggest some minimal job search outside the 40-hour work week is medically prohibited.
 {¶ 20} While I do not suggest claimant is not entitled to working wage loss compensation, the order leaves open enough details that I am compelled to agree that the matter be returned to the commission forNoll compliance and a greater explanation of the evidentiary basis for the staff hearing officer's (1) applying a broad-based analysis on these facts, and (2) determining claimant incapable of even minimal job search outside the 40-hour work week. *Page 8