ON OBJECTIONS TO THE MAGISTRATE'S DECISION IN MANDAMUS MEMORANDUM DECISION
Relator, Debbie Cable, has filed an original action in mandamus requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying her application for permanent and total disability compensation, and to issue an order finding that she is entitled to such compensation pursuant to State ex rel. Gayv. Mihm (1994), 68 Ohio St.3d 315. In the alternative, relator requests this court to issue a writ of mandamus ordering the commission to vacate its order because the order constitutes an abuse of discretion.
This matter was referred to a magistrate of this court, pursuant to Civ.R. 53(C), and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision denying relator's requested writ of mandamus. Relator has filed objections to the magistrate's decision. Essentially, relator contends that the commission did not adequately comply with the requirements of State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167, and State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203. We agree.
The staff hearing officer, in his findings, acknowledged relator's claim as being allowed for:
 * * * Lumbosacral Sprain; Sacroiliac Sprain; Herniated Nucleus Pulpo is L5-S1 Lumbosacral Neuritis; L5-S1 radiculopathy, disc degeneration L5-S1. Somatoform pain disorder.
The staff hearing officer denied relator's application for permanent total disability based particularly on the report of an orthopedist, Dr. James Rutherford, who found that, because of her allowed orthpedic claims, she could not return to her former position of employment but, with restrictions, could do sedentary work activities. However, in an addendum to his report, he more specifically described these restrictions:
 I have reviewed my independent medical examination on Betty A. Cable dated October 14, 1997 related to claim #94-324497. In that report I indicated that Ms. Cable had residual findings of a left radiculopathy following two surgical procedures on her lower back related to her industrial claim. These included clinical findings as well as an EMG done in January, 1996 that described a chronic left L-5 radiculopathy. It is thus my opinion that Ms. Cable had a DRE Category III impairment of the lumbosacral spine and a 10% permanent partial impairment of the whole person. It is my opinion that she was capable of doing sedentary work activities and in addition that she could do activities with a 10 lb. lifting limit if she had a sit/stand option. She could drive an automatic car for her own transportation only. She could not stoop or bend below knee level for work activity and she could not climb or crawl for work activity. She could not do the prolonged continuous sitting or standing required of production line activity. She could not climb stairs for repetitive work activity. She had satisfactory use of her upper extremities. Ms. Cable would need some modification and flexibility in her schedule to do sustained remunerative sedentary work activities with the restrictions that I had described. It is my opinion that she could not do her previous job as an inspector at Inland Finishing Products.
 Ms. Cable, in my opinion, would have difficulty sitting or standing and walking for more than 30 min. at a time as she then tends to develop symptoms which make it difficult for her to sit or stand in a functional position. This is why I stated that she could do sedentary activities such as desk work with occasional standing and walking which would allow her to move about some and in addition she could do activities with a 10 lb. lifting limit if she had a sit/stand option. In reviewing Dr. J. Michael Shane's Employability Assessment Report of December 17, 1997 he did not note that it was my opinion that she could [not] do the prolonged continuous sitting or standing required of production line activity. Some of the employment options that he listed such as final assembler could or might involve the prolonged continuous sitting or standing required of production line activity. I would thus put the additional restriction of no prolonged sitting or standing and walking of more than 30 min. at one time to the functional limitations that I described to clarify this matter. This is essentially what I meant when I stated that she would require a sit/stand option with a 10 lb. lifting limit or that she could do sedentary activities with occasional standing and walking.
 Once Ms. Cable has developed symptoms of paresthesias [sic] in her left lower extremity or a flare-up of her symptoms related to activity and a radiculopathy in her left lower extremity she then sometimes has to make modifications in her activities and this is why I put in the phrase that she would need some flexibility in her working schedule to do sustained remunerative employment even at a sedentary level. This would bring one into the area of reasonable accommodation. Ms. Cable could be expected to have occasional flare-ups of her symptoms such that she could not work some days at all. To be more specific about her limitations it's my opinion that Ms. Cable could be expected to miss approximately 3 wks. of the type of sedentary work that I have described due to flare-ups of her symptoms. This would be the equivalent of 120 hrs. a year and some of this could be accounted for by whatever degree of sick time was available. Because of the intermittent nature of her symptoms this might mean that she would have to miss three weeks during the course of a year or that she might miss occasional days or shorten her days from 8 hrs. to 6 hrs. related to flare-ups in her symptoms. The total combination of missed periods of work, intermittent missed days of work, and shortened work days however, would total approximately 120 hrs. a year. This is of course an estimate and it is based on the condition that she have work activity which would require not to do prolonged sitting or standing and walking of more than 1/2 hr. at a time.
We note that Ohio Adm. Code 4121-3-34(B)(2)(a) states:
 "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met. (Emphasis added.)
The staff hearing officer, in his efforts to comply with the requirements of Stephenson and Noll, analyzed relator's non-medical factors, along with their relationship to the medical restrictions placed upon relator by Dr. Rutherford in the following way:
 Vocationally, claimant was age 41 when this injury occurred, and she is currently only age 45. An individual of this age would ordinarily be expected to have up to 20 years remaining in the work force. The claimant did complete high school. As a work history, claimant worked as a waitress in a restaurant for 13 years, she worked in a grocery deli for a short period, and she did factory work as a laborer or inspector for approximately 2 1/2 years. There has been one unsuccessful contact with the Rehabilitation Division in June of 1995, with a closure due to claimant's pending second surgery.
 A review of this file shows that multiple physicians have recommended that claimant participate in a chronic pain management program, including Dr. Eboh (claimant's surgeon), 01/05/1996; Dr. Zerick, 03/19/1996; Dr. Longert, 07/16/1996; Dr. Lakatos, 04/02/1997; and Dr. Harding (claimant's attending physician), 01/14/1998. This recommendation is further born out by the 02/25/1997 report of Dr. Venesy. The claimant was finally evaluated in this regard by Dr. Rothstein on 04/15/1997. Dr. Rothstein suggested a comprehensive interdisciplinary pain management program, and he said that the claimant seemed to be in agreement with this approach. The attending physician did file a C-161 requesting authorization for this program on 05/21/1997 but, for reasons not clear, this has not been further addressed or pursued.
 Reports on file suggest that the claimant is of at least average intelligence, and her age, education, and to a lesser extent her work history, are all found to be vocational assets.
 In summary, it is found that claimant does have very real physical restrictions in this claim, and that at this time she retains the residual functional capacity to perform sedentary employment, with the added restrictions from Dr. Rutherford. However, based on claimant's education and work history, and particularly on her age, this Staff Hearing Officer does not find that claimant lacks all vocational potential. It is reasonable to conclude that claimant does still maintain the potential to benefit from rehabilitation/pain management attempts, and that a return to sustained remunerative employment by using past employment skills or those skills which may be reasonably developed has not been ruled out. The evidence is not found to establish that claimant is permanently and totally disabled due to the conditions allowed in this claim.
We find the staff hearing officer's analysis deficient. The staff hearing officer does not adequately explain how Dr. Rutherford's restrictions imposed upon relator is in accord with the commission's definition of "sedentary work." Ohio Adm. Code4121-3-34(B)(2)(a). Specifically, relator's restriction of sitting no more than thirty minutes at a time, combined with Dr. Rutherford's opinion that the claimant will miss three weeks of work at unpredictable times because of pain flair-ups, needs to be reconciled and more fully analyzed.
We acknowledge that State ex rel. Wood v. Indus. Comm.
(1997), 78 Ohio St.3d 414, holds that the commission need not find a claimant capable of a full range of sedentary employment as a condition to denying permanent total disability. However, in view of Dr. Rutherford's opinion, we believe further explanation by the commission is warranted.
Accordingly, we sustain the objections to the magistrate's decision and adopt the findings of fact contained in the magistrate's decision as supplemented by any additional findings above. We do not adopt the conclusions of law contained in the decision of the magistrate. Therefore, a limited writ of mandamus is issued compelling the Industrial Commission of Ohio to vacate its order denying her application for permanent total disability compensation. The limited writ of mandamus shall further compel the commission to enter a new order either granting or denying the compensation with an appropriate explanation of the commission's decision consistent with this memorandum decision.
Objections sustained; Limited Writ of mandamus granted.
BRYANT and DESHLER, JJ., concur.