DECISION
{¶ 1} Relator, Carlotta D. Bloom, commenced this original action seeking a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order concluding that relator refused to accept a bona fide offer of suitable employment, and to issue a new order that considers all the relevant evidence.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision the magistrate concluded the commission did not abuse its discretion in determining, in its role as the finder of fact, that relator's employer made a written job offer of employment that was within relator's physical capabilities. The magistrate further concluded that (1) the commission did not abuse its discretion in failing to rely on, or at least mention, other medical reports, (2) the commission did not abuse its discretion in finding that Dr. Williams was the physician of record, and (3) the staff hearing officer's order complies with the requirements of State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203. Accordingly, the magistrate determined the requested writ of mandamus should be denied.
 {¶ 3} Relator has filed objections to the magistrate's decision, largely rearguing those matters the magistrate adequately addressed. Relator's objections contend the magistrate incorrectly determined that State ex rel. Fultz v. Indus. Comm. (1994), 69 Ohio St.3d 327, does not apply to the circumstances of this case. Fultz states that although "the commission correctly contends in essence that it need only enumerate the evidence relied on, the fact that the commission in listing the evidence considered omitted those two reports from that list, leads to only one conclusion — the commission either inadvertently or intentionally ignored that evidence." (Emphasis added.) Id. at 329. Unlike Fultz, the staff hearing officer here indicated she considered all evidence in the file and adduced at hearing in reaching her decision, which includes the report of Dr. Bacevich that relator asserts is essential to her claim for compensation. Moreover, the staff hearing officer also specified what evidence she relied on to reach her determination. While the staff hearing officer did not explain why she rejected the report of Dr. Bacevich, nothing in Fultz requires the staff hearing officer to explain why she rejected evidence on which she did not rely.
 {¶ 4} Relator's objections also contend ¶ 18 of the magistrate's decision, while correct, fails to note Dr. Bacevich further stated that "this woman will never return to her former position in the bakery field or any type of labor field." Relator is correct that Dr. Bacevich stated not only what the magistrate incorporated into ¶ 18 of her decision, but also the statement noted in relator's objections. The staff hearing officer, however, did not rely on the report of Dr. Bacevich in reaching her determination. Accordingly, the magistrate's incomplete recitation of Dr. Bacevich's report is not material to a determination of relator's complaint in mandamus.
 {¶ 5} For the foregoing reasons, as well as those set forth in the magistrate's decision, relator's objections are overruled.
 {¶ 6} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled; writ denied.
PETREE, P.J., and TYACK, J., concur.
 APPENDIX A
Beirne Wirthlin Co., L.P.A., and James A. Grant, for respondent JTM Provisions Company, Inc.
Jim Petro, Attorney General, and Thomas L. Reitz, for respondent Industrial Commission of Ohio.
DECISION IN MANDAMUS
 {¶ 7} In this original action, relator, Carlotta D. Bloom, seeks a writ of mandamus compelling respondent Industrial Commission of Ohio ("commission"), to vacate its order concluding that relator refused to accept a bona fide offer of suitable employment, and to issue a new order that considers all the relevant evidence.
Findings of Fact:
 {¶ 8} 1. On November 29, 2001, Carlotta D. Bloom ("claimant") sustained severe injuries to her right hand and arm while working in a bakery. Within 15 days, she underwent three surgical procedures to repair her hand. Her workers' compensation claim was allowed for multiple conditions of the right hand and arm.
 {¶ 9} 2. On December 26, 2001, Rafael Williams, M.D., completed a C-84 form certifying temporary total disability ("TTD") compensation beginning November 29, 2001.
 {¶ 10} 3. The record includes a number of Dr. Williams' progress notes. He described treatment on the date of injury and continuing examination/treatment in December 2001, January 2002, February 2002, and March 2002. He opined, among other things, that claimant would eventually need additional surgery.
 {¶ 11} 4. On January 30, 2001, claimant was referred for vocational rehabilitation.
 {¶ 12} 5. On February 6, 2002, Dr. Williams noted that the wounds were well healed and that claimant had made progress in therapy, gaining ability to grasp and carry objects. However, the wrist was held in a flexed position and the hand was weak. Dr. Williams stated that he would see claimant again in six weeks after she continued to work on strengthening in her therapy sessions.
 {¶ 13} 6. In addition, on February 6, 2002, claimant and her case manager, Shirley West, R.N., discussed vocational rehabilitation with Dr. Williams, and he signed a release. When asked whether claimant could return to a temporary, light-duty assignment with restrictions, Dr. Williams answered, "Yes." When asked whether claimant could "work an eight hour day," he answered, "Yes." Dr. Williams stated that claimant could perform "Light" work exerting 11 to 20 pounds with the left hand only. He prohibited use of the right arm and required that claimant must be able to attend therapy sessions.
 {¶ 14} 7. Based on Dr. Williams' statements, Ms. West contacted the employer on February 7, 2002, to inquire whether it could provide a light-duty assignment within the restrictions imposed by Dr. Williams. The employer advised that it could provide light-duty work within the doctor's restrictions.
 {¶ 15} 8. On February 8, 2002, Ms. West noted that the employer had two light-duty jobs requiring the use of only one hand. The employer had provided a job description and explained that claimant could arrive whenever she wanted because one of the jobs could be performed until 7:30 in the evening, permitting claimant to work flexible hours as needed to accommodate her therapy.
 {¶ 16} Ms. West noted that TTD had not been paid because the employer had continued to pay full wages. She explained that, if claimant returned to work, claimant would not commence a vocational-rehabilitation plan as initially anticipated. Ms. West noted that claimant could not drive a car due to her industrial injury and that she (the case manager) was working on transportation for claimant. Ms. West noted that she had been unable to reach claimant on several occasions, so Ms. West had advised the employer to call claimant and set up a date and time for coming to work.
 {¶ 17} 9. On February 11, 2002, the employer sent claimant a letter stating that it had prepared a light-duty position within her restrictions, which was available immediately. The employer provided a job description.
 {¶ 18} 10. The job description states that the bakery room operates from 7:30 a.m. to 7:30 p.m., and that the packing room operates from 8:00 a.m. to 5:00 p.m., so that a 40-hour week could be arranged between the two rooms. In the bakery, claimant would monitor production to make sure that the slicer was properly slicing the buns, monitor the metal detector and log the data, and code the dating boxes. In the packing room, claimant would monitor the production line to make sure lids on boxes were closed, push in a tab as the product came down the line during kit production, and monitor other boxes to make sure they were glued and traveling smoothly to the packing area. The job required standing or sitting for prolonged periods. No lifting was required, and the work could be performed using one arm. The bakery duties would be in a room-temperature location but the packing duties were performed at times in a 40-degree temperature, although the job could be modified to eliminate the cold environment.
 {¶ 19} 11. On February 11, 2002, Ms. West noted that she had spoken with claimant, who advised that she was not interested in the job and requested that all contact be made through her lawyer.
 {¶ 20} 12. On February 21, 2002, Ms. West stated that the bus company provided a shuttle or van for the disabled but that claimant would need to go to the company's office for an assessment, and there was no guarantee that she would qualify.
 {¶ 21} 13. Claimant did not respond to the employer's letter, and she did not report for the light-duty assignment.
 {¶ 22} 14. On February 25, 2002, Paul R. Fassler, M.D., an associate of Dr. Williams, signed a letter stating that working in a cold environment would be detrimental to claimant and that she should not "use her right arm in any way at work." Dr. Fassler stated that claimant's pain was being controlled minimally to moderately with medications, but he stated that she "could work a full work week" as long as she could "attend all therapy appointments." Dr. Fassler commented that it would be difficult for claimant to perform tasks with her left hand because she was right-hand dominant.
 {¶ 23} 15. Dr. Williams certified TTD on forms dated March 22, 2002, April 3, 2002, and April 29, 2002. On each of these forms, he explicitly stated that claimant could return to modified or light-duty work, provided the employer could accommodate the restriction of no use of the right arm.
 {¶ 24} 16. On March 25, 2002, the employer filed a motion requesting a finding that the claimant had refused or not responded to an offer of suitable employment.
 {¶ 25} 17. On May 16, 2002, a hearing was held before a district hearing officer ("DHO"), resulting in an order determining that claimant had refused a job offer of suitable employment.
 {¶ 26} 18. On May 22, 2002, claimant was examined by Bernard B. Bacevich, M.D., who opined that claimant would need continued physical therapy and occupational therapy. He agreed with the need for further surgery but believed that claimant would nonetheless have permanent loss of function of the right hand and fingers, and would need to learn to perform daily activities with her left hand. He stated that vocational evaluation was needed to determine whether there were jobs that claimant could perform without her right upper extremity.
 {¶ 27} 19. On May 30, 2002, Dr. Williams signed a letter under the letterhead of Hand Surgery Specialists, Inc., noting that he had dictated the letter signed by Dr. Fassler on February 25, 2002. He described the details of claimant's current hand/wrist function and explained why further surgery was planned. He also noted that claimant's medication rendered it inadvisable for her to drive a car or operate machinery.
 {¶ 28} 20. In July 2002, a hearing was held before a staff hearing officer ("SHO"), who affirmed the DHO order but modified it, ruling as follows:
 {¶ 29} "* * * [T]he employer's motion filed on 3/25/2002 [is] granted to the following extent.
 {¶ 30} "By writing dated 2/6/2002, the claimant's treating physician, Dr. Williams, stated that the claimant could return to work, with restrictions. Specifically, the claimant was restricted from full duty work. Dr. Williams opined that the claimant could only perform temporary work. Dr. Williams stated the claimant could work eight hours per day. Dr. Williams adamantly stated that the claimant could not use her right arm in any capacity. Dr. Williams limited the claimant to use of her left hand and arm, with an eleven to twenty pound lifting restriction.
 {¶ 31} "Based upon the restrictions set forth by Dr. Williams in his 2/6/2002 report, this employer caused to be mailed to the claimant a letter dated 2/11/2002. In said letter, the employer advised the claimant that it had reviewed Dr. Williams restrictions, and that based upon them, it had `prepared a light duty position' within said restrictions. The self-insured employer mailed the letter to the claimant, via certified mail. The claimant confirmed at hearing that the address stated on the letter was her correct address at the time. The employer also stated that it forwarded a copy of the same letter to the claimant's legal counsel.
 {¶ 32} "* * *
 {¶ 33} "The claimant continued thereafter to treat with Dr. Williams as evidenced by an office note dated 3/20/2002, and by C-84 filings dated 3/22/02, 4/3/02, and 4/29/02 respectively. On all three C-84s (3/22/02, 4/3/02, and 4/29/02), Dr. Williams restates his opinion that the claimant can perform light duty, alternative work, modified work or transitional work, `provided an employer can accommodate restrictions.' The only restrictions stated on the C-84s is: `no use of right arm.' This restriction is fully consistent with the written restrictions of Dr. Williams, first memorialized in his report dated 2/6/2002.
 {¶ 34} "* * * The claimant also argues that the job offer was not one made in good faith because the restrictions stated by Dr. Williams have be [sic] supplanted by those from Dr. Fassler, as evidenced in his letter dated 2/25/2002 to the claimant's legal counsel.
 {¶ 35} "The Staff Hearing Officer finds that it is without merit. Dr. Fassler is not the claimant's treating physician. On 2/6/2002, Dr. Williams was the claimant's physician of record. Dr. Williams placed the claimant on restrictions. These restrictions are set forth in the 2/6/2002 writing from Dr. Williams. The evidence further establishes that Dr. Williams continued to be the claimant's treating physician through at least 4/29/2002, the date of the most recent C-84.
 {¶ 36} "Accordingly, the Staff Hearing Officer finds that Dr. Fassler has not been, and was not, the claimant's treating physician for purposes of setting forth physical restrictions in this claim.
 {¶ 37} "* * *
¶ 38} "Accordingly, it is the finding of the Staff Hearing Officer that the claimant refused a valid light duty job offer made to her offering her work effective 2/11/2002.
 {¶ 39} "This order is based upon the claimant's affidavit, noted above, and the wage information in file submitted by both parties.
 {¶ 40} "This order is also based upon the medical reports of Dr. Williams dated 2/6/2002, 3/22/2002, 4/3/2002, and 4/29/2002. This finding and order is also based upon the employer's letter to the claimant, dated 2/11/2002. Finally, this finding and decision is also based upon Ohio Administrative Code 4121-3-32."
 {¶ 41} 21. Further appeal was refused.
Conclusions of Law:
 {¶ 42} Claimant challenges the commission's determination that the employer made a job offer of suitable employment. Under R.C. 4123.56(A), TTD compensation cannot be paid for a period "when work within the physical capabilities of the employee is made available by the employer or another employer."
 {¶ 43} Under Ohio Adm. Code 4121-3-32(B)(2), a hearing officer may terminate TTD compensation when the employer had made a job offer of suitable employment to the worker in writing. The term "suitable employment" is defined as "work which is within the employee's physical capabilities." Ohio Adm. Code 4121-3-32(A)(3). A "job offer" is a "proposal, made in good faith, of suitable employment within a reasonable proximity of the claimant's residence." Ohio Adm. Code 4121-3-32(A)(6).
 {¶ 44} Here, the commission in its role as the finder of fact determined that the employer made a written job offer of employment that was within claimant's physical capabilities. That determination was within the commission's discretion. Dr. Williams plainly stated on February 6, 2002, that claimant could work eight hours per day, performing light-duty work, as long as it did not require her to use her right arm and as long as she could attend her therapy appointments. The written job offer sets forth employment that does not require use of the right arm and that would accommodate the employee's therapy schedule. Thus, the commission's decision was not an abuse of discretion.
 {¶ 45} Dr. Williams' subsequent reports also support the commission's decision. On C-84 forms, he stated that claimant could perform modified work provided she did not have to use her right arm. His narrative report of May 30, 2002, is consistent with his prior statements that claimant was capable of working, provided that she did not use her right hand and could attend therapy appointments. The prohibition against operating machinery did not render the offer unsuitable because the job description does not require the worker to operate any machinery.
 {¶ 46} In sum, beginning on February 6, 2002, Dr. Williams consistently opined that claimant could return to work on a full-time basis as long as she did not have to use her right arm and could attend therapy. The letter of February 25, 2002 regardless of whether it was signed by Dr. Fassler or Dr. Williams did not establish that the job was beyond claimant's physical capabilities. The writer of that letter reaffirmed that claimant could work a "full work week" as long as she did not use her right arm and could attend therapy, and the writer expressed concern about only one feature of the proposed job, advising only against working in the cold. However, the job offer explicitly states that the duties in the cold environment can be eliminated. The writer also commented that it would be "difficult" for claimant to perform tasks with her left hand but did not state that claimant would be unable to perform tasks with her left hand. The writer certainly did not state that the offered job required dexterity with the left hand that would place the job outside claimant's physical capabilities. Thus, whoever wrote it, the letter of February 25, 2002 does not establish that the job offer was unsuitable.
 {¶ 47} Accordingly, the magistrate concludes that the commission was within its discretion to conclude that the employer made a job offer of suitable employment. In reaching this conclusion, the magistrate has rejected several arguments raised by claimant: (1) that the commission abused its discretion in failing to rely on or at least mention other medical reports; (2) that the commission abused its discretion in finding that Dr. Williams was the physician of record; and (3) that the SHO order fails to meet the requirements of State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 48} The first argument is without merit. The commission is required to identify only the evidence on which it relied and has no duty to identify other evidence or explain why it rejected other evidence. See, e.g., State ex rel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575; State ex rel. Lovell v. Indus. Comm. (1996), 74 Ohio St.3d 250. The circumstances in State ex rel. Fultz v. Indus. Comm. (1994),69 Ohio St.3d 327, are not present here, and the magistrate finds no abuse of discretion.
 {¶ 49} The second argument regarding the "physician of record" is also without merit. Dr. Williams was the physician who examined claimant, made the progress notes in the patient's file, and signed the C-84 reports. He was the physician who met with claimant and her case manager, and signed the release form. Although Dr. Fassler later signed a letter regarding claimant's status, Dr. Williams said he dictated it. Thus, the commission was within its discretion to view Dr. Williams as the physician of record.
 {¶ 50} In any event, the commission was within its discretion to rely on his reports regardless of whether or not Dr. Williams was the "physician of record." The administrative code sets forth two different rules for terminating TTD compensation, depending on whether termination is ordered pursuant to an evidentiary hearing. The criteria under Ohio Adm. Code 4121-3-32(B)(1) apply to termination by the self-insured employer or the Ohio Bureau of Workers' Compensation without a hearing. The criteria under Ohio Adm. Code 4121-3-32(B)(2) apply to termination of TTD by a hearing officer.
 {¶ 51} The employer or bureau may terminate TTD where claimant's "treating physician" has found that claimant "is capable of returning to his former position of employment or other available suitable employment," under Ohio Adm. Code 4121-3-32(B)(1)(b). The "treating physician" is the "attending physician of record on the date of the job offer." Ohio Adm. Code 4121-3-32(A)(4). In contrast, when the matter is being decided in an evidentiary hearing, the hearing officer may terminate TTD compensation upon a finding "that the employee has received a written job offer of suitable employ-ment." Ohio Adm. Code4121-3-32(B)(2)(d). The hearing officer may rely on any medical evidence it finds persuasive, whereas the employer may unilaterally terminate TTD only when the treating physician has made the finding of suitability. In the present action, the record includes no evidence that the employer terminated TTD compensation on its own without a hearing. Thus, the higher standard under division (B)(1) did not apply. The commission was within its discretion to rely on Dr. Williams' report, and, in any event, the report of Dr. Fassler did not contradict Dr. Williams' reports on which the commission relied.
 {¶ 52} Third, the magistrate finds no violation of Noll, supra. There is no indication on the face of the order that the commission failed to consider all the evidence, as in Fultz, supra. Although claimant insists that the SHO simply parrotted most of the DHO order without giving full consideration to the issues, the text of the SHO order indicates otherwise. Instead of ruling simply that the DHO order was "affirmed" and providing no discussion or modification, the SHO modified some but not all of the DHO order. The SHO plainly modified the findings pertaining to the job offer, which indicates that the SHO gave independent consideration to the issues surrounding the employer's job offer. Although the SHO did not identify claimant's new evidence or explain why it failed to persuade the SHO to alter the decision, the SHO was not obliged to identify that evidence or explain why it did not change the decision. Bell; Lovell, supra.
 {¶ 53} In sum, the commission cited some evidence to support its decision and provided an adequate explanation of its rationale. The decision was, therefore, within its discretion. See State ex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373 (stating that, in mandamus, a commission order supported by "some evidence" must be upheld regardless of whether the record includes other evidence, greater in quantity and/or quality, that supports the contrary decision). The magistrate, therefore, recommends denial of the requested writ of mandamus.