DECISION
{¶ 1} Relator, George Mock, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying compensation for permanent total disability and to grant the requested compensation under State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315, or to issue an order that complies with State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167, and State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed an objection to the magistrate's decision.
 {¶ 3} Relator fails to present any argument or explain how the magistrate erred in his objection to the magistrate's decision, merely attaching a copy of his brief filed before the magistrate. We have reviewed the magistrate's decision and the record, and we agree with her well-reasoned explanation and final determination.
 {¶ 4} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's objection, we overrule the objection and find that the magistrate sufficiently discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, and deny relator's request for a writ of mandamus.
Objection overruled; writ denied.
PETREE, P.J., and McCORMAC, J., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 DECISION IN MANDAMUS {¶ 5} In this original action in mandamus, relator, George Mock, asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying compensation for permanent total disability ("PTD") and to grant compensation under State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315, or to issue an order that complies with State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167, and State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
Findings of Fact:
 {¶ 6} 1. In 1989, George Mock ("claimant") had a workers' compensation claim allowed for "injury of left knee," and he returned to work. In December 1993, claimant sustained an exposure to chlorine gas and his worker's compensation claim was allowed for pulmonary conditions including acute bronchiolitis. In 1996, claimant sustained another injury, which was allowed for a lumbosacral sprain. Claimant again returned to work. In 1997, a lumbar sprain was allowed, and, in December 1997, claimant sustained a sprained left knee and leg with a torn meniscus, ligament injury, and torn ACL.
 {¶ 7} 2. In September 1998, claimant ceased working.
 {¶ 8} 3. In February 2001, claimant filed a PTD application supported by medical reports from Mark Scott, M.D. Claimant stated that he had an eighth-grade education and could write and do basic math, and could read but not well.
 {¶ 9} 4. In April 2001, claimant was examined for both the pulmonary and orthopedic conditions by James Lutz, M.D., who noted that claimant's chief complaint was "low back pain and right leg numbness." Dr. Lutz made findings regarding both the orthopedic and pulmonary conditions, and he concluded that claimant could engage in sedentary employment. He observed no shortness of breath during the examination but noted indications that claimant becomes short of breath upon exertion or upon exposure to fumes and vapors.
 {¶ 10} 5. Claimant was also examined by James Lockey, M.D., whose report is described in the commission's order below.
 {¶ 11} 6. An employability assessment, as described in the order below, was submitted on the commission's behalf by William Darling. He opined, among other things, that, based on Dr. Lutz's restrictions, claimant would be able to begin employment immediately in such occupations as "sorter, stuffer, laminator, plastic-design applier, cashier, convenience store clerk, and self service station attendant." Mr. Darling stated that, with minimal training, claimant could work as a gate guard or security guard.
 {¶ 12} 7. In October 2001, claimant's PTD application was heard, resulting in an order denying compensation, as follows, in pertinent part:
 {¶ 13} "All of the relevant medical and vocational reports on file were reviewed and considered in arriving at this decision. This order is based upon the reports of Dr. Locky [sic], Dr. Lutz and Mr. Darling.
 {¶ 14} "* * * The claims are allowed for injuries involving the left knee, the low back, and the pulmonary system. The Claimant has two low back claims. Both claims involved slips and falls. The Claimant was never treated surgically in either of his low back claims. The Claimant was able to return to work without restrictions after both of these injuries. The Claimant also has two claims involving injuries to the left knee. The Claimant was also able to return to work after both of these injuries. * * *
 {¶ 15} "* * * The Claimant informed Dr. Lutz that he sees his pulmonologist 6-8 times per year, takes oral medication daily and uses an inhaler and a nebulizer as needed. * * * Claimant complained of shortness of breath which varies in severity depending upon activity level, weather, and inhalation of fumes and vapors. * * * Dr. Lutz noted that the Claimant did not exhibit signs of shortness of breath through the examination. He further advised that examination of the chest and lungs revealed that the lungs were completely clear to auscultation bilaterally. Dr. Lutz advised that the Claimant has significant residual effects related to his pulmonary status which varies in severity depending on exposures and activity levels. * * * On the physical strength rating form that is attached to his report, Dr. Lutz indicated that the Claimant is capable of physical work activity. He further indicated that the Claimant is capable of certain sedentary work.
 {¶ 16} "Dr. James Lockey, occupational pulmonary medicine, examined the Claimant on 07/20/2000 at the request of the Bureau of Workers' Compensation. As part of his evaluation Dr. Lockey performed the following: occupational and medical history; physical examination and spirometry, and review of previous medical records. Dr. Lockey advised that the Claimant was removed from work on 09/04/1998 because of respiratory symptomatology. He further advised that the Claimant's overall condition has somewhat improved since being off work. Dr. Lockey noted that records indicated that as of 02/04/1999 the Claimant was able to ascend two flights of stairs at a slow pace and walk an unlimited distance on a flat surface at a slow pace. Records of 02/04/1999 further indicated that the Claimant would develop some wheezing with cold weather, around humid conditions, or with exposure to dust or fumes. At the time of Dr. Lockey's evaluation the Claimant advised that he has continued to improve. At that time the Claimant continued to advised [sic] that he is able to walk at a low pace on a flat surface and is able to climb two flights of stairs. He further advised that he has an occasional cough and wheezing that occurs once to twice per week. The results of the spirometry testing that Dr. Lockey performed on 07/20/2000 were interpreted as normal. Dr. Lockey advised that the Claimant has reached Maximum Medical Improvement and that the industrial injury of 12/12/1993 would prevent the Claimant from returning to work at his former position of employment. Dr. Lockey further advised that the majority of the Claimant's limitations are in regard to exposure to increased concentrations of irritating dust, gas, fumes or mists. He further advised that because the Claimant is physically deconditioned in combination with the allowed conditions, Claimant would be limited to walking up two flights of stairs at a slow pace and walking on a level surface for 4-5 blocks at a slow pace. He further advised that the Claimant would not be able to do repetitive lifting over 20 pounds. He further advised that the Claimant would not have limitations in relationship to the use of his hands or legs. He further advised that the Claimant is able to drive and handle his own finances. He further advised that the the [sic] Claimant can stand and sit without limitations.
 {¶ 17} "The Staff Hearing Officer finds that the Claimant's condition has reached Maximum Medical Improvement and that the industrial injury prevents the Claimant from returning to work at his former position of employment. The Staff Hearing Officer further finds, based upon the reports of Dr. Lockey and Dr. Lutz, that the Claimant retains the functional capacity to perform employment activities which are sedentary in nature.
 {¶ 18} "Mr. William Darling, employability assessor, prepared an Employability Assessment Report for the Industrial Commission on 06/07/2001. The Staff Hearing Officer notes that the report of Mr. Darling is the only vocational evidence on file. Mr. Darling advised that if he accepted the functional capacities opinion of Dr. Lutz, Claimant could perform the following jobs immediately: sorter, stuffer, laminator, plastic design applier, cashier, convenience store clerk, and self-service station attendant. He further advised that the Claimant's age of 55 years would not be a barrier to the Claimant with regard to his ability to return to employment. He further advised that the Claimant's eight[h] grade education would be sufficient for entry level unskilled and semi skilled employment tasks. He further advised that the Claimant's work history which is diverse and includes work in sales would not be a barrier to the Claimant with regard to his ability to become reemployed. He further advised that there is no evidence in file to indicate that the Claimant could not benefit from a structured vocational rehabilitation program designed at skill enhancement and reemployment. Mr. Darling characterized the Claimant's work history as having involved semi skilled and skilled skill level and light, medium and heavy strength level activities. Mr. Darling further advised that in his work history Claimant had demonstrated a general educational developement [sic] which would indicate that the Claimant is capable of high school level reasoning and language and seventh to eight[h] grade level math. He further advised that in his work history the Claimant has demonstrated mostly average and above aptitudes. He further advised that in his work history the Claimant has demonstrated the following temperaments: performing repetitive tasks; influencing people; performing a variety of tasks; performing precise, to close tolerances; dealing with people; and making judgements and decisions.
 {¶ 19} "The Staff Hearing Officer finds that the Claimant is 56 years of age with an eight[h] grade education and a work history which involves employment as a water plant operator, a mechanic, a warehouse worker, and an insurance salesman. The Staff Hearing Officer finds that the Claimant has no specific vocational training. The Staff Hearing Officer notes that the Claimant, on his Permanent Total Disability application, indicated that he is not able to read well. The Staff Hearing Officer notes that this is not consistent with the Claimant's ability to obtain an insurance license in the State of Ohio. The Staff Hearing Officer further notes that the Claimant testified at the hearing that he did not actually take the insurance test, that someone else took the examination for him. The Staff Hearing Officer notes, however, that whether Claimant took the test or not, Claimant was able to perform the job of an insurance salesman. The Staff Hearing Officer therefore finds that the Claimant has an eight[h] grade education had at least the ability to perform academically at the seventh to eighth grade level.
 {¶ 20} "The Staff Hearing Officer finds that the Claimant's age of 56 years is a moderate barrier to the Claimant with regard to his ability to return to and compete in the work place. The Staff Hearing Officer further finds, however, that age alone is not a factor which would prevent the Claimant from returning to work. The Staff Hearing Officer further finds that the Claimant's age of 56 years would not prevent the Claimant from returning to work. The Staff Hearing Officer further finds that the Claimant's limited eighth grade education is a mild barrier to the Claimant with regard to his ability to return to work. The Staff Hearing Officer further finds, however, that the Claimant has never had greater than and eight[h] grade education and it has not prevented the Claimant from working in the past. The Staff Hearing Officer further finds that not only has the Claimant's limited education not prevented him from working, it has not prevented the Claimant from performing the skilled occupations of an insurance salesman and a mechanic. The Staff Hearing Officer further finds that the Claimant's eight[h] grade education is adequate for the performance of many entry level unskilled and semi skilled employment tasks. The Staff Hearing Officer further finds that the Claimant's demonstrated ability to read, write and perform basic math would be assets to the Claimant with regard to the Claimant's ability to learn the new work rules, work skills and work procedures necessary to perform other types of employment. The Staff Hearing Officer further finds that there is nothing in the record to indicate that the Claimant could not benefit from a structured vocational rehabilitation program designed at skill enhancement and reemployment. The Staff Hearing Officer further finds that the fact that the Claimant has learned to perform skilled employment activities in spite of his limited education is evidence that the Claimant possesses the intellectual skills to learn to perform other types of employment. The Staff Hearing Officer further finds that these same factors are evidence that the Claimant would be able to benefit from on the job training and would be able to learn to perform at least unskilled and semi skilled employment activities in the future. The Staff Hearing Officer accepts the residual functional capacities opinions of Dr. Lockey and Dr. Lutz and finds that the Claimant is able to perform sedentary employment activities. The Staff Hearing Officer further finds that the Claimant would be able to perform the following jobs immediately: sorter; stuffer; cashier; and convenience store clerk. The Staff Hearing Officer therefore finds the Claimant is capable of sustained remunerative employment * * *."
Conclusions of Law:
 {¶ 21} Claimant challenges the commission's denial of PTD compensation, arguing that the commission abused its discretion (1) in relying on the report of William Darling and (2) in failing to give appropriate consideration to the Stephenson factors.
 {¶ 22} Claimant argues that the report of Mr. Darling is defective as a matter of law because he accepted the medical limitations imposed by Dr. Lutz, including the prohibition against exposure to fumes and gases, and then concluded that claimant could perform a variety of jobs, including work in a self-service gas station. The magistrate, however, finds no fatal contradiction that requires the removal of the vocational report from evidentiary consideration.
 {¶ 23} First, Mr. Darling's list of job options does not patently contradict the restrictions that Dr. Lutz imposed. For example, Mr. Darling did not state that claimant could perform the type of gas-station employment that includes regular tasks near the pumps, such as pumping gas and checking oil, or working indoors in an area adjacent to service bays where exhaust fumes may build up. Rather, Mr. Darling opined that claimant could work as a cashier/attendant at a self-service station. Claimant cites no evidence that required the commission to conclude that working inside the retail-store portion of a self-service station necessarily exposes a worker to harmful fumes. Similarly, claimant provides no evidence establishing that other jobs listed by Mr. Darling necessarily expose the worker to harmful fumes.
 {¶ 24} Second, even if the court were to find that one or two of the job options listed by Mr. Darling appeared to be outside a specific medical restriction, the fact remains that Mr. Darling listed numerous options. Even if one or two of the options were stricken from consideration, the magistrate sees no fundamental defect that must remove the entire vocational report from evidentiary consideration as a matter of law.
 {¶ 25} Most importantly, when stating its conclusions, the commission did not adopt all the options listed by Mr. Darling. The commission did not find that claimant could work as a gas station attendant, laminator, etc. Thus, to the extent that Mr. Darling listed questionable options, the commission rejected those options anyway. The commission is within its discretion to accept the persuasive parts of a vocational report and reject the unpersuasive parts. State ex rel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139; State ex rel. Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266. Here, the commission was within its discretion to rely only on the jobs options that were more logical for claimant.
 {¶ 26} Next, claimant argues that the commission abused its discretion in its evaluation of the non-medical or vocational factors. However, the magistrate finds no abuse of discretion in the commission's analysis. While it is true that the commission did not say much about claimant's age, commenting only that claimant's age of 56 years would not prevent him from being reemployed, the magistrate finds that the commission had no duty to discuss the age at greater length, under the circumstances. The Ohio Supreme Court has said that the commission may view the age of 52 as young and as an asset to reemployment. State ex rel. Miller v. Indus. Comm. (1996), 76 Ohio St.3d 590; State ex rel. Ellis v. McGraw Edison Co. (1993), 66 Ohio St.3d 92. Given that claimant was 56 years old, the commission did not abuse its discretion in stating briefly that claimant's age was not a barrier to reemployment.
 {¶ 27} In regard to claimant's basic ability to read, write and do basic math, the Ohio Supreme Court has recognized broad discretion in the commission's evaluation of the usefulness of those abilities. In State ex rel. West v. Indus. Comm. (1996), 74 Ohio St.3d 354, the court ruled that the commission may rely on a claimant's ability to read, write and perform basic math — even if not well — in concluding that claimant is capable of performing an entry-level position. Here, the commission's reliance on claimant's basic literacy and math ability, in support of a capacity to perform an entry-level job, was within its discretion. Likewise, given that claimant could read, write and do basic math, the commission was within its discretion to conclude, in reliance on Mr. Darling, that claimant's education was sufficient to permit him to perform entry-level employment.
 {¶ 28} The court's role in mandamus is limited, and the court must uphold an order supported by some evidence regardless of whether the record includes other evidence, greater in quantity and/or quality, that supports the contrary decision. State ex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373, 376. Here, the record included diverse evidence that was susceptible to interpretation. The finder of fact was not persuaded that the combination of medical and vocational factors rendered claimant unable to perform any kind of sustained remunerative employment, and it cited some evidence to support its decision and provided a brief explanation of its rationale as required by Noll, supra. Accordingly, the commission's decision was within its discretion, and the magistrate recommends denial of the requested writ of mandamus.