DECISION
{¶ 1} Relator, Jim Kwiecien, commenced this original action in mandamus requesting this court to issue a writ ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this case was referred to a magistrate of this court to conduct appropriate proceedings. The magistrate has rendered a decision, including findings of fact and conclusions of law, and has recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) No objections were filed to the magistrate's decision.
 {¶ 3} Finding no error or other defect on the face of the magistrate's decision, pursuant to Civ.R. 53(C), we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained therein. In accordance with the recommendation of the magistrate, the requested writ of mandamus is denied.
Writ of mandamus denied.
 Brown and Watson, JJ., concur. APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Jim Kwiecien, : Relator, : v. : No. 03AP-559 Industrial Commission of Ohio : and Borden Chemical, Inc., : Respondents. :
 MAGISTRATE'S DECISION {¶ 4} In this original action, relator, Jim Kwiecien, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting said compensation.
Findings of Fact:
 {¶ 5} 1. On April 19, 1984, relator sustained an industrial injury which is allowed for: "contusion coccyx; subluxation of 1st and 2nd coccygeal segments; lumbar scoliosis with pelvic tilt; low back strain; L5-S1 radiculopathy; herniated disc L4-5; dysthymia," and is assigned claim number 846918-22.
 {¶ 6} 2. On July 6, 2002, relator filed an application for PTD compensation.
 {¶ 7} 3. In support of his application, relator submitted a report from Nicholas P. DePizzo, II, D.O., who examined relator on July 8, 2002. The report itself does not indicate whether Dr. DePizzo has ever treated relator. Nevertheless, Dr. DePizzo's report states:
* * * Based on my examination and history and following the AMA Guide to Evaluation of Permanent Impairment, Fifth Edition, it is my opinion that this patient has a 28% impairment of the whole person regarding the allowed conditions plus the depressive factor, which is to be added by a psychiatrist. It is also my opinion since this patient has had surgery and extensive physical therapy and rehab with no improvement in his condition and since he still has these restrictions and complaints as mentioned in my report, it is my opinion that this patient is permanently and totally disabled from any and all gainful employment.
 {¶ 8} 4. In further support of his application, relator submitted a report from psychologist Anthony DeRosa, Ph.D. The report is dated August 26, 2002. The report does not directly indicate whether Dr. DeRosa has ever treated relator. Nevertheless, Dr. DeRosa's report states:
* * * [T]he examiner is unable to state that Mr. Kwiencien [sic] is totally and permanently disabled as a result of his psychiatric condition, Dysthymia. It is estimated that his psychiatric disability (dysthymia) is at the thirty percent impairment level.
 {¶ 9} 5. Relator also submitted a vocational report, dated November 27, 2002, from John Ruth. Mr. Ruth opined "Mr. James Kwiecien will be unable to successfully seek or sustain remunerative employment."
 {¶ 10} 6. On October 16, 2002, relator was examined by Ronald M. Yarab, Jr., M.D., on behalf of the commission. Dr. Yarab wrote:
* * * Using the AMA Guides to Evaluation of Permanent Impairment, 4th Edition, DRE classification of impairment, I would place the claimant in a DRE Lumbosacral Category III which is Radiculopathy. Inclusion in this category, the claimant has significant signs of radiculopathy such as loss of relevant reflexes and unilateral atrophy. This is a 10% impairment of the whole person and this is for the allowed condition of contusion of coccyx, lubluxation of 1st and 2nd coccygeal segments, lumbar scoliosis with pelvic tilt, low back strain, L5-S1 radiculopathy, and herniated disc L4-L5.
 {¶ 11} 7. Dr. Yarab also completed a "Physical Strength Rating" form dated October 16, 2002. On the form, Dr. Yarab indicated that relator was capable of sedentary work.
 {¶ 12} 8. On October 16, 2002, relator was examined by psychologist Robert L. Byrnes, Ph.D., on behalf of the commission. Dr. Byrnes wrote:
According to the AMA Guides to the Evaluation of PermanentImpairment IV, I find this claimant's impairment to be moderate and I assign a 15% whole person impairment for his allowed mental condition only.
(Emphasis sic.)
 {¶ 13} 9. Dr. Byrnes also completed an occupational activity assessment form dated October 16, 2002. On this form, Dr. Byrnes marked "yes" in response to the two-part query:
* * * Based on the impairment resulting from the allowed/-alleged psychiatric/psychological condition(s) only, can this injured worker meet the basic mental/behavioral demands required:
[1] To return to any former position of employment?
[2] To perform any sustained remunerative employment?
 {¶ 14} 10. The commission requested an employability assessment report from Thomas P. Kinser, a vocational expert. The Kinser report, dated November 26, 2002, responds to the following query:
* * * Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition[s], identify occupations which the claimant may reasonably be expected to perform, [A] immediately and/or, [B] following appropriate academic remediation or brief skill training.
 {¶ 15} Indicating acceptance of Dr. Yarab's reports, and responding to the above query, Kinser lists the following employment options:
* * * Stuffer, Quality Control Monitor, Sorter, Document Prepare-Microfilm, Food Checker, Order Clerk-Food and Beverage[.]
* * * Check Cashier, Reservation Agent, Receptionist, Outpatient Admitting Clerk, Payroll Clerk, Billing Clerk, Dispatcher-Radio[.]
 {¶ 16} Indicating acceptance of Dr. Byrnes' reports, and responding to the above query, Kinser wrote:
* * * Return to previous job[.]
 {¶ 17} 11. Following a February 6, 2003 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order states:
After full consideration of the issue of permanent and total disability, it is the order of the Staff Hearing Officer that the application filed 7-26-02 be denied. This order is based upon the report of Dr. Ronald Yarab, M.D., dated 10-16-02, the report of Dr. Robert Byrnes, Ph.D., dated 10-16-02, the report of Vocational Expert Thomas Kinser, MS, CDMS, dated 11-26-02, and the claimant's non-medical disability factors.
Dr. Yarab examined the claimant with regard to his allowed physical conditions. Dr. Yarab opines that claimant has reached maximum medical improvement and that claimant retains the ability to perform "sedentary work."
* * *
This Hearing Officer specifically accepts this opinion of Dr. Yarab.
The Staff Hearing Officer also finds that claimant was examined by Dr. Byrnes for the allowed psychiatric disorders of this claim. Dr. Byrnes opines that the claimant has reached maximum medical improvement for his allowed psychiatric disorders. Dr. Byrnes further concludes that claimant retains the mental capacity to engage in some employment. The Staff Hearing Officer accepts this opinion of Dr. Byrnes. Based upon the above opinions of Drs. Yarab and Byrnes, the Hearing Officer finds that the claimant's medical impairment is not by itself determinative of this permanent and total disability issue. Therefore a con-sideration of the claimant's non-medical disability factors is warranted.
The claimant is 44 years of age. This age falls within the classification of a person of younger age. This finding is based upon Industrial Commission Resolution R95-1-08. The Hearing Officer finds that claimant's age is an asset. At such a young age, this claimant still has years remaining in which he could participate in vocational rehabilitation and retraining programs so that he could acquire and develop the additional academic and job skills necessary to perform sedentary employment. In this regard, Vocational Expert Thomas Kinser explains in his report of 11-26-02 that "claimant's age does not affect his ability to meet basic demands of entry-level occupations." The Staff Hearing Officer finds this opinion of Vocational Expert Kinser to be persuasive. The Staff Hearing Officer relies upon this opinion of Vocational Expert Kinser in issuing this order.
The Staff Hearing Officer also finds that claimant has a high school education. Claimant graduated from Boardman High School in 1977. During his years as a high school student, claimant participated in a two-year automotive mechanic program in which he received training as an auto mechanic. Vocational Expert Kinser states in his report of 11-26-02 that claimant's past educational history reflects that claimant has the ability to learn. Notably, in ten of the eleven categories addressed by Vocational Expert Kinser concerning claimant's aptitude, Kinser scores claimant as having the ability to perform at the average level. Dr. Byrnes corroborates this assessment in his report of 10-16-02. Therein, Dr. Byrnes relates that claimant is of average intellectual capacity, possesses fair concentration and memory, and has the capacity to learn. The Staff Hearing Officer agrees with this assessment of claimant's intellectual abilities as presented by Vocational Expert Kinser and Dr. Byrnes. The Staff Hearing Officer finds that claimant's prior educational background, and his retained capacity to learn, are assets which would enable the claimant to be retrained in an area of work that is within the sedentary classification.
With respect to claimant's work history, the Staff Hearing Officer finds that claimant was able to retain employment for a period of eight years prior to his injury in this claim. From 1977 to 1978 claimant worked at Forest City Auto Parts as a stock clerk. From 1978 to 1984 claimant worked as a milk receiver for Borden Chemical Inc. This work was classified as medium to heavy in nature by Vocational Expert Kinser. While claimant's limited eight year work history in medium to heavy work may be viewed as unfavorable in terms of claimant's ability to be re-employed, the Staff Hearing Officer finds that claimant's retained capacity to learn, coupled with his relatively young age, more than compensate for that detriment. Given the opinions of Vocational Expert Kinser and Dr. Byrnes noted above, the Staff Hearing Officer finds that there is not a bar to claimant being retrained for work that is within his retained physical and psychiatric capacities.
In regard to the question of claimant's ability to be retrained, the Staff Hearing Officer finds that throughout claimant's eighteen year period of being off work, claimant participated in limited vocational rehabilitation. His last participation in such a program was in 1986. The 1-22-86 Rehabilitation Closure report from the Industrial Commission Rehabilitation Division provides that claimant elected not to continue with this rehabilitation plan. That report states that claimant no longer wanted to be involved with the ICRD. For whatever reason claimant chose not to continue in that ICRD program, it is clear that from 1986 to this present hearing date of 2-6-03, claimant has not attempted to further his education, has not participated in any of the programs available through the Bureau of Vocational Rehabilitation, and has not sought job placement assistance through a provider that deals with injured workers (such as Goodwill Industries or other local social service agencies). This is significant to the deter-mination of claimant's present application for permanent and total disability benefits. In State ex rel. Cunningham v. IndustrialCommission (2001) 91 Ohio St.3d 261, it was stated that it is "not unreasonable to expect a claimant to participate in return-to-work efforts to the best of his or her abilities or to take the initiative to improve rehabilitation potential." (Id.
At p. 262). Continuing, the Ohio Supreme Court stated that "while extenuating circumstances can excuse a claimant's non-participation in reeducation or retraining efforts, claimants should no longer assume that a participatory role, or lack thereof, will go unscrutinized[.]" (Id. At p. 262).
Here, the Hearing Officer is not persuaded that there are extenuating circumstances which would excuse claimant's failure to engage in other retraining or reeducation programs in an effort to improve his re-employment potential. This finding is amplified given that claimant is only forty-four years of age and has been off work since the age of 26. As set forth in Stateex rel. Wilson v. Industrial Commission (1997),80 Ohio St.3d 250, permanent total disability is a com-pensation of "last resort, to be awarded only when all reasonable avenues of accomplishing a return to sustained remunerative employment have failed." The Hearing Officer finds, based upon the above evidence, that claimant has not exhausted all reasonable avenues for accomplishing a return to sustained remunerative employment given his failure to participate in retraining, re-education, and additional vocational rehabilitation programs.
Finally[,] regardless of the claimant's lack of participation in re-education, retraining, or vocational rehabilitation programs, Vocational Expert Kinser opines that claimant still retains the capacity to perform sedentary work as a "stuffer, sorter, food checker, check cashier, and billing clerk." The [S]taff Hearing Officer agrees with these employment options for this claimant and finds that claimant retains the functional capacity to perform such work. The Staff Hearing Officer relies upon the opinion of Vocational Expert Kinser, the report of Dr. Yarab, and the report of Dr. Byrnes in this regard.
Based upon the above listed medical capacities/restrictions and the non-medical disability factors, this Hearing Officer finds that this claimant's disability is not total, and that this claimant is capable of engaging in sustained remunerative employment, or being retrained to engage in sustained remunerative employment. Therefore[,] the claimant's request for an award of permanent total disability compensation is denied.
 {¶ 18} 12. On March 21, 2003, the commission mailed an order denying relator's request for reconsideration of the SHO's order of February 6, 2003.
 {¶ 19} 13. On June 6, 2003, relator, Jim Kwiecien, filed this mandamus action.
Conclusions of Law:
 {¶ 20} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 21} In his brief, relator argues:
The Relator submitted two medical reports in support of his Permanent and Total Disability application, those of Dr. DePizzo and Dr. DeRosa, who opined that the Relator was both physically and psychiatrically disabled. Additionally, vocational evidence pointed to the fact that the Relator was Permanently and Totally Disabled.
It was a mistake of law and/or fact for the Staff Hearing Officer to put so much emphasis and weight on the State doctor's reports in light of the treating physician's opinions.
(Relator's brief at 3.)
 {¶ 22} Thus, relator seems to argue that the reports of Drs. DePizzo and DeRosa are entitled to enhanced weight because they are allegedly relator's treating physicians. Apparently, relator is contending that the commission failed to give the reports of Drs. DePizzo and DeRosa the weight to which they are entitled and, on that basis, claims that the commission abused its discretion.
 {¶ 23} Relator's argument is easily answered. It is well-settled that in a PTD determination, the claimant's attending physicians are not entitled to enhanced weight. Stateex rel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575, 577. The commission has the exclusive authority to evaluate evidentiary weight and credibility. Id.
 {¶ 24} Perhaps relator is suggesting that the commission was required to explain why the reports of the so-called state doctors were found to be more persuasive than the reports of relator's doctors. Clearly, the commission is under no obligation to explain why it did not rely upon the reports of Drs. DePizzo and DeRosa. Id.
 {¶ 25} In his three-page brief, relator devotes one-half page to summarizing State ex rel. Taylor v. Indus. Comm. (1995),71 Ohio St.3d 582. However, relator fails to explain how the holding in Taylor applies to any of the evidence relied upon by the commission here. Under such circumstances, relator's summary of the Taylor case presents no issue for this court to address in this action.
 {¶ 26} Relator also cites to State ex rel. Noll v. Indus.Comm. (1991), 57 Ohio St.3d 203. However, relator fails to explain how Noll advances his request for a writ of mandamus. Under such circumstances, relator's citation to Noll presents no issue for this court to address in this action.
 {¶ 27} Accordingly, for all the foregoing reasons, it is this magistrate's decision that this court deny relator's request for a writ of mandamus.