{¶ 1} Relator, Anthony F. Antoun, filed this action in mandamus, seeking a writ which would compel the Industrial Commission of Ohio ("commission") to grant him permanent total disability ("PTD") compensation.
 {¶ 2} In accord with Loc.R. 12, this case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. *Page 2 
The magistrate then issued a magistrate's decision which contains detailed findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate's decision includes a recommendation that we deny the request for a writ of mandamus.
 {¶ 3} Counsel for relator has filed objections to the magistrate's decision. Counsel for the commission has filed a memorandum in response. The case is now before the court for review.
 {¶ 4} Relator was injured in the summer of 1999 while working as a construction laborer. His industrial claim has been allowed for "sprain of knee leg nos, right; sprain of ankle nos, right; sprain lumbosacral, right; radiculitis, right lumbosacral; major depressive disorder, single episode; disc herniation L4-5; impingement neuroforamina L3-S1; aggravation of pre-existing degenerative disc disease L3-S1."
 {¶ 5} In 2006, relator filed an application for PTD compensation. The application was supported by a report from a psychiatrist and a report from his treating physician. Both indicated that relator is permanently and totally disabled.
 {¶ 6} The commission had relator examined by a psychologist who found a moderate level of impairment related to the depressive disorder, single episode. The commission also had relator examined by a physician who found relator capable of light work with the limitations that he "avoid repetitive stooping and forward bending" and "alternate sitting and standing as needed."
 {¶ 7} A vocational report from John Ruth was also provided to the commission at the request of relator's counsel. The report indicated that relator is capable of sedentary work at most. *Page 3 
 {¶ 8} A staff hearing officer ("SHO") reviewed the various reports and concluded that relator is not entitled to PTD compensation. The SHO concluded that relator is capable of light work in a non-stressful, non-demanding environment. The SHO reviewed the non-medical disability factors and found that, taken as a whole, they were somewhat positive. The SHO felt the age of 55 was a position factor because it left approximately 10 years of working life. The SHO also felt that relator's high school diploma was an indication of the intellectual ability to learn new skills, especially when coupled with his ability to read, write and do basic math.
 {¶ 9} The SHO found relator's work history was a neutral factor. Relator had spent most of his career as a truck driver in a construction environment and that no transferable skills were apparent. Still, the skills required to be a truck driver were sufficiently complex so as to indicate an ability to acquire the skills for a new job.
 {¶ 10} Counsel for relator disagrees with the SHO's conclusions. The disagreement is the same disagreement counsel argued before the magistrate. The magistrate has more than adequately explained why the SHO's order should not be overturned. Little or nothing can be gained from reiterating the discussion in the magistrate's conclusions of law.
 {¶ 11} We overrule the objections to the magistrate's decision. We adopt the findings of fact and conclusions of law in the magistrate's decision. As a result, we deny the request for a writ of mandamus.Objections overruled; writ of mandamus denied.
 McGRATH, P.J., and BRYANT, J., concur. *Page 4 
 IN MANDAMUS {¶ 12} In this original action, relator, Anthony F. Antoun, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to *Page 5 
vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 13} 1. On August 3, 1999, relator sustained an industrial injury while employed as a construction laborer for respondent Northern Ohio Paving, a state-fund employer. The industrial claim is allowed for "sprain of knee leg nos, right; sprain of ankle nos, right; sprain lumbosacral, right; radiculitis, right lumbosacral; major depressive disorder, single episode; disc herniation L4-5; impingement neuroforamina L3-S1; aggravation of pre-existing degenerative disc disease L3-S1," and is assigned claim number 99-477126.
 {¶ 14} 2. On July 21, 2006, relator filed an application for PTD compensation. Under the "Education" section of the PTD application form, relator indicated that he graduated from high school in 1969. He did not attend a trade or vocational school or receive any type of special training. Among other information sought, the application form posed three questions: (1) Can you read? (2) Can you write? (3) Can you do basic math? Given a choice of "yes," "no," and "not well," relator selected the "yes" response to all three queries.
 {¶ 15} The PTD application form also asks the applicant to provide information regarding his work history. Relator indicated that he was employed with Northern Ohio Paving from June 1988 to August 1999, and that he generally worked six or seven days per week.
 {¶ 16} 3. In support of his PTD application, relator submitted a report dated July 13, 2006, from psychiatrist Anil Choudary Nalluri, M.D., stating: *Page 6 
 Based on the subjective complaints of the examinee, my objective findings, and review of the documentation, the degree of psychiatric impairment due to the 296.23 Major Depressive Disorder, Single Episode, Severe Without Psychotic Features directly attributable to the work-related injury is 34% of the whole person, severe limitation in most activities of daily living, impeding useful action of most daily social and interpersonal functioning. * * *
 * * *
 Based on the combined physical and psychiatric effects, it is my professional clinical opinion that Mr. Antoun is not capable of any gainful, remunerative employment now. Neither present nor additional treatment will enable the patient to return to work within the next 12 months. If given benefits, he is capable of managing his funds now.
 It is highly unlikely for this 54-year-old man with a 12th grade education and limited transferable skills to find a job. He worked his whole life as a laborer. Even if he finds a job, he is unable to perform the essential work duties. When taking into consideration his combined physical and psychological impairment, age, education, transferable skills, and job availability, he is totally and permanently impaired. * * *
(Emphasis sic.)
 {¶ 17} 4. In further support of his PTD application, relator submitted a report dated June 3, 2006 from David R. DelliQuadri, D.O., stating:
 Based on my observations of this patient over the past several years since date of injury throughout multiple remission exacerbations of his pain symptom complex, it is my opinion that this patient is totally and permanently unable to perform the duties of his previous occupation. I also note that this patient is unable to perform any type of gainful employment * * *.
 {¶ 18} 5. On October 25, 2006, at the commission's request, relator was examined by psychologist Steven A. Van Auken, Ph.D. In his narrative report dated October 30, 2006, Dr. Van Auken wrote: *Page 7 
 Considered together, his functioning in these areas indicates a Class III, moderate level of impairment. This is consistent with an impairment in the amount of thirty percent (30%) of the body as a whole realistically attributable to his "major depressive disorder, single episode."
 {¶ 19} 6. Dr. Van Auken also completed a form captioned "Occupational Activity Assessment[,] Mental Behavioral Examination." On the form, Dr. Van Auken indicated his agreement with the following preprinted statement: "This injured worker is capable of work with the limitation(s) / modification(s) noted below." In the space provided, Dr. Van Auken wrote:
 In and of themselves[,] Mr. Antoun's depressive symptoms — — including diminished concentration and energy [l]evels, and diminished stress tolerance — — would prevent him from working safely and effectively as a truck [d]river. They would not necessarily prohibit all forms of work. He would be most likely to succeed in work [t]hat is based in routine and is low in performance demands.
 {¶ 20} 7. On October 25, 2006, at the commission's request, relator was examined by Elizabeth W. Mease, M.D. In her narrative report, Dr. Mease opined that the allowed physical conditions produce an eight percent whole person impairment.
 {¶ 21} 8. Dr. Mease also completed a physical strength rating form. On the form, Dr. Mease indicated by checkmark that relator is capable of light work. The form also asks the physician to state "[f]urther limitations, if indicated." In the space provided for a response, Dr. Mease wrote: "avoid repetitive stooping forward bending alternate sitting standing as needed."
 {¶ 22} 9. Thereafter, relator, through counsel, requested that John Ruth prepare a vocational report. In his report dated December 7, 2006, Mr. Ruth opined:
 To determine potential to perform work activities in all planes, the Whole Body Range of Motion Work Sample *Page 8 
was administered. Here, an individual is requested to perform work activities overhead, at shoulder height, at bench height, and in bent and crouched positions. Through direct observation of this man performing this work sample, it was noted that he was unable to work overhead, in a bent or crouched position whatsoever. When this claimant attempted to perform work activities overhead, he physically was able to raise his hands to head height only. He reported low back pain at this point. When attempting to work in a bent position, Mr. Antoun was able to bend slightly at the waist, however, was unable to bend sufficiently to perform any transfers on this work sample. At this point, the claimant reported severe low back pain. He was unable to crouch whatsoever due to reported leg and low back pain. Difficulties with range of motion were noted in an independent medical examination report written 10/25/06 by Elizabeth Mease, M.D. which states under the Impression subsection, "He should avoid repetitive stooping and forward bending. He should be allowed to sit and stand as needed." These range of motion difficulties will restrict this man to only selective forms of sedentary work.
 Throughout the evaluation process, this claimant appeared to have difficulties with sitting and standing tolerance. Mr. Antoun moved about frequently in his chair and alternated between a sitting and standing position. He was exceedingly slow in arising from a sitting position. He reported a maximum sitting tolerance of approximately 15 minutes, standing tolerance of 10-15 minutes, and walking tolerance of only short distances. The previously cited Mease, M.D. medical report of 10/25/06 documents, "He should be allowed to sit and stand as needed." Limited sitting, standing, and walking tolerance may not allow this man to perform all aspects of even sedentary work thus significantly reducing vocational options.
 * * *
 * * * It must be noted that the Mease, M.D. medical report — Physical Strength Rating form of 10/28/06 lists this man's lifting capacity at light. Clearly, the definition of light work would require this man to perform extended standing and walking activities based upon the definition. In part, the definition of light work states, "Physical demand may be only a negligible amount, a job should be rated light work (1) when it requires walking or standing to a significant degree; *Page 9 
or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls." The Mease report clearly states under the Impression subsection, "He should avoid repetitive stooping and forward bending. He should be allowed to sit and stand as needed." These specific restrictions will not allow Mr. Antoun to perform light work. As such, this man would be restricted to sedentary work tasks. * * *
(Emphasis sic.)
 {¶ 23} 10. Following a February 22, 2007 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order explains:
 This order is based upon the reports of Dr. Mease and Dr. VanAuken.
 Dr. Mease, who examined the Injured Worker on behalf of the Industrial Commission strictly regarding the Injured Worker's orthopedic conditions only, indicated that the Injured Worker has reached maximum medical improve-ment, and that he cannot return to his former position of employment as a construction truck driver/laborer; but is capable of performing light work activities which means exerting up to 20 pounds of force occasionally and [sic] and/or up to 10 pounds of force constantly to move objects. She sums her opinion by indicating that the the [sic] Injured Worker has a 8% permanent partial impairment with respect to the whole person as it relates to the Injured Worker's sole industrial injury from an orthopedic stand point.
 Dr. VanAuken, who examined the Injured Worker on behalf of the Industrial Commission strictly regarding the Injured Worker's psychiatric conditions only, indicated that the Injured Worker's condition has also reached maximum medical improvement, and that he cannot return to his former posi-tion of employment but would be able to return to some sustained renumerative [sic] employment in a non-stressful, non-demanding environment and one that would be based in routine and low in performance demands. He further indicates that the Injured Worker has a 30% permanent partial impairment with respect to the whole person as it relates to the Injured Worker's] psychiatric condition for which is recognized in the Injured Worker's sole industrial injury. *Page 11 
 Therefore, based upon the opinion of Dr. Mease and Dr. VanAuken who combined examined the Injured Worker on all of the allowed conditions for which the Injured Worker's sole industrial injury is recognized, the Staff Hearing Officer concludes on a whole that the Injured Worker is medically capable of performing some sustained renumerative [sic] employment i.e. light work in a non-stressful, non-demanding work environment. Therefore, the Staff Hearing Officer finds that a discussion of the Injured Worker's non-medical disability factors are now in order.
 The Injured Worker is 55 years of age and has a high school education. Per the Injured Worker's IC-2 application on file as well as testimony presented as [sic] hearing, the Injured Worker indicates the ability to read, write, and do basic math. The Injured Worker's work history early on in his working career consist of working a few years in a steel mill as a laborer, but primarily worked the bulk and latter portion of his working career for a few employer[s] out of the local union including the above stated employer for approximately 14 years as a construction/truck driver performing duties as driving semi-trucks, dump-trucks, operating some industrial equipment, and all other related duties.
 Mr. Ruth, performed performed [sic] a vocation[al] evaluation of the Injured Worker on behalf of the Injured Worker. Upon reviewing the Injured Worker's work history, age, and education, he found no work experience would indicate that the Injured Worker would be able to work in a non-stressful, non-demanding light-work environment. However, upon reviewing the Injured Worker's work history, age, and education, the Staff Hearing Officer is not persuaded nor concurs with Mr. Ruth's opinion and find that the Injured Worker's non-medical disability factors on a whole do not have a negative impact on the Injured Worker's ability to work or be retrained but rather are to be viewed as some-what positive factors from a vocational viewpoint.
 As indicated before, the Staff Hearing Officer finds that the Injured Worker's age is a positive factor as the Injured Workers' age is a positive factor as the Injured Workers' age of 55 leaves approximately 10 years of working life ahead of him. *Page 12 
 The Staff Hearing Officer finds that the Injured Worker's education is also a positive factor. The Staff Hearing Officer finds that the Injured Worker's high-school education may not necessarily provide the Injured Worker with present time skills, but is evidence of the Injured Worker's ability to learn new skills conductive to at least light work in an entry level position. The Staff Hearing Officer finds that the Injured Worker's high school education in and of itself does not indicate a lack of intellectual ability to be retrained as the Injured Worker indicates his ability to read, write and do basic math well.
 Finally, the Staff Hearing Officer finds that the Injured Worker's work history and work experience would be a neutral factor which neither favors nor disfavors re-employability. The Injured Worker's experience is pre-dominately one occupation which can be classified at best as semi-skilled employment. The Staff Hearing Officer finds that the Injured Worker's work experience has not necessarily provided the Injured Worker with immediate transferable skills. However, the Injured Worker's work history as a construction worker/truck driver would clearly indicate and suggest that the Injured Worker has the skills and qualifications to perform some other occupation or at least be retrained to perform some other occupation in a light-duty capacity.
 In summary, the Staff Hearing Officer concludes that the Injured Worker's non-medical disability factors on a whole favor re-employment i.e. that the positive age and education factors outweigh the neutral work history factor and that the Injured Worker can be retrained to perform some other occupation based upon his low age and prior high school education.
 Therefore, based upon the limited physical restriction as indicated by Dr. Mease as well as psychological limitations outlined by Dr. VanAuken who combined indicate that the Injured Worker can perform light work in a non-stressful, non-demanding environment along with the Injured Worker's age with approximately 10 years of working life ahead of him and high school education on a whole find that the Injured Worker can at least be retrained to perform some other occupation and therefore is not permanent[ly] and total[ly] disabled and concluded from all sustained renumerative [sic] employment. *Page 13 
 {¶ 24} 11. On March 23, 2006, relator, Anthony F. Antoun, filed this mandamus action.
Conclusions of Law: {¶ 25} Two main issues are presented: (1) whether the SHO abused his discretion in determining that relator is medically capable of performing light work based upon the report of Dr. Mease, and (2) whether the SHO abused his discretion in analyzing relator's work history.
 {¶ 26} The magistrate finds: (1) the SHO did not abuse his discretion in determining that relator is medically able to perform light work based upon the report of Dr. Mease, and (2) the SHO did not abuse his discretion in analyzing relator's work history.
 {¶ 27} Turning to the first issue, Ohio Adm. Code 4121-3-34(B)(2) provides the following classifications of physical demands at work:
 "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
 "Light work" means exerting up to twenty pounds of force occasionally, and/or up to ten pounds of force frequently, and/or a negligible amount of force constantly (constantly: activity or condition exists two-thirds or more of the time) to move objects. Physical demand may be only a negligible amount, a job should be rated light work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling or arm or leg controls; and/or (3) when the job *Page 13 
requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.
 {¶ 28} According to relator, the "further limitations" that Dr. Mease describes in her report "would place the Relator's so-called restrictions somewhere between light to sedentary work, not strictly at the light work level." (Relator's brief at 6.) Apparently, relator does not entirely agree with his own expert, Mr. Ruth, who opined that relator was restricted to sedentary work based upon Dr. Mease's report. Relator then asserts that the SHO has violated State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203, by failing to explain how he determined that relator could perform light work.
 {¶ 29} The syllabus of Noll states: "In any order of the Industrial Commission granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision."
 {¶ 30} Noll does not require the commission to explain, even briefly, why a medical report was found to be persuasive. State ex rel. Bell v.Indus. Comm. (1995), 72 Ohio St.3d 575, 577-578. Thus, the SHO was not required under Noll to explain why he relied upon Dr. Mease's report, nor was the SHO required to answer Mr. Ruth's challenge to Dr. Mease's conclusion that relator could perform light work. Id.
 {¶ 31} Relator also suggests here that Dr. Mease's "further limitations" are in conflict with her conclusion that relator can perform light work. This issue is perhaps raised by the Mr. Ruth's report which the SHO did not rely upon. Thus, relator seems to argue that Dr. Mease's report cannot constitute some evidence upon which the commission can rely to support a finding that relator can perform light work. See State *Page 14 ex rel. Lopez v. Indus. Comm. (1994), 69 Ohio St.3d 445 (a medical report can be so internally inconsistent that it cannot constitute some evidence).
 {¶ 32} Mr. Ruth's explanation as to why Dr. Mease's "further limitations" restrict relator to sedentary work as defined by the Ohio Administrative Code is not persuasive.
 {¶ 33} Albeit, under the definition of light work, when a job requires walking or standing to a significant degree it should be rated as light work. However, Dr. Mease did not restrict relator from walking or standing to any significant degree. Dr. Mease only required that the job permit "alternate sitting and standing as needed." Thus, while relator must be permitted to alternate sitting and standing as needed, there is no limitation as to the amount of total walking and standing that relator can perform based on Dr. Mease's report. In short, Dr. Mease's opinion that relator can perform light work is not inconsistent with her "further limitations."
 {¶ 34} Turning to the second issue, Ohio Adm. Code 4121-3-34(B) sets forth certain definitions used by the commission in the adjudication of PTD applications. Ohio Adm. Code 4121-3-34(B)(3) is captioned "Vocational factors." Ohio Adm. Code 4121-3-34(B)(3)(c) is captioned "Work experience." Thereunder, Ohio Adm. Code 4121 — 3-34(B)(3)(c)(iv) and (v) states:
 (iv) "Transferability of skills" are skills which can be used in other work activities. Transferability will depend upon the similarity of occupational work activities that have been performed by the injured worker. Skills which an individual has obtained through working at past relevant work may qualify individuals for some other type of employment.
 (v) "Previous work experience" is to include the injured worker's usual occupation, other past occupations, and the skills and abilities acquired through past employment which demonstrate the type of work the injured worker may be able to perform. Evidence may show that an injured worker has *Page 15 
the training or past work experience which enables the injured worker to engage in sustained remunerative employment in another occupation. The relevance and transfer-ability of previous work skills are to be addressed by the adjudicator.
 {¶ 35} The SHO's finding that relator's work experience has not provided "immediate transferable skills" can be viewed as being inconsistent with the SHO's statement in the next sentence that the work history "would clearly indicate and suggest that [relator] has the skills and qualifications to perform some other occupation." However, in the magistrate's view, what saves the SHO's analysis is his finding that relator's work history indicates that relator can be "retrained to perform some other occupation in a light duty capacity," and that the work history is viewed as a "neutral factor."
 {¶ 36} Clearly, the commission has the discretion to view a claimant's work history as an asset even in the absence of transferable skills.State ex rel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139, 142. A claimant's lack of transferable skills does not mandate a PTD award. Id. Moreover, the nonexistence of transferable skills is not of critical importance when the issue becomes whether the claimant can be retrained for another occupation. Id.
 {¶ 37} Here, there is abundant evidence that relator can be retrained. He has a high school education and admits that he is able to read, write and do basic math well. As the SHO significantly observed in the order, relator's high school education does not indicate a lack of intellectual ability. See State ex rel. Ellis v. McGraw Edison Co. (1993),66 Ohio St.3d 92. *Page 16 
 {¶ 38} Thus, even if it can be said that the SHO's order is contradictory in addressing the transferability of skills question, the flaw is not fatal to the overall integrity of the order. That is, the SHO has adequately explained how the nonmedical factors permit relator to be retrained to perform sustained remunerative employment.
 {¶ 39} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1